## FIDELITY & CASUALTY CO. OF NEW YORK v. FREEMAN.

(Circuit Court of Appeals, Sixth Circuit. June 4, 1901.)

### No. 824.

1. ACCIDENT INSURANCE—DEFENSE OF SUICIDE—EVIDENCE CONSIDERED.

In an action on an accident policy, which excepted liability for death by suicide, it was shown that the insured was killed by falling or jumping from the platform of a moving railroad car; that he was financially embarrassed, and his property was about to be sold by creditors; that he had made unsuccessful attempts to borrow money, and was threatened with criminal prosecution for fraudulent practices; and that he had within a short time increased his accident insurance. On the other hand, it was shown that he was of sanguine temperament, and much attached to his family; that he was accustomed to keep a considerable insurance on his life and against accidents; and that after his death his property sold for enough to pay his debts. *Held* that, in view of the fact that the burden rested on defendant to prove the defense of suicide and to overcome the presumption against it, the court properly refused to direct a verdict for defendant on that ground.[1]

2. APPEAL—REVIEW—INSTRUCTIONS.

A party cannot assign error on the failure of the court to give a particular charge, where the record shows no request therefor, and no exception to the charge given upon the same subject.

3. INSURANCE—LIMITATION OF ACTION ON POLICY—EFFECT OF AMENDMENT OF DECLARATION.

Pending an action by an administrator on a policy of insurance on the life of the decedent, payable to his legal representative, and after the time limited by such policy for bringing an action thereon, a will of the deceased was found and probated, and the administrator was thereunder appointed administrator with the will annexed. On his application his declaration in the action was amended by making him a party plaintiff in his new capacity. *Held.* that since the cause of action was in favor of the estate, and remained the same, the change in the representative character of the plaintiff did not destroy the continuity of his representation. so as to entitle the defendant to plead the limitation contained in the policy, to the amended declaration as the commencement of a new action.[2]

4. SAME.

A provision of an accident policy limiting the time within which an action may be brought thereon in case of the injury or death of the insured must be held to intend an action subject to the rules of pleading and procedure established by statute, and, where an action is instituted within the time limited, an amendment of the declaration substituting a new party to represent the same right of recovery, as permitted by statute, cannot be claimed by defendant to operate as a discontinuance, and the bringing of a new action within the meaning of such provision.

---

[1] Risks and cause of loss, see note to National Acc. Soc. of City of New York v. Dolph, 38 C. C. A. 3.

[2] Conditions in policy as to time of bringing suit, see notes to Steel v. Insurance Co., 2 C. C. A. 473; Rogers v. Insurance Co., 35 C. C. A. 404.

5. SAME—CONSTITUTIONALITY OF TENNESSEE STATUTE—SPECIAL LEGISLATION.
Acts Tenn. 1895, c. 160, § 22, providing that no misrepresentation or warranty made in the negotiation of a contract of insurance or.in the application therefor shall be deemed material, or affect the validity of the policy, unless "made with actual intent to deceive, or unless the matter misrepresented increases the risk of loss," is not invalid under the provision of the state constitution prohibiting special or class legislation because the act excepts from its operation contracts for life and casualty insurance upon the assessment plan, since the separate classification for legislative purposes of contracts of mutual insurance and those of insurance for a fixed premium cannot be regarded as arbitrary, but is based on substantial differences in the rights and relations of the parties to such contracts.

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

This is an action at law, removed into the court below from the circuit court for Wilson county, Tenn., upon the petition of the above-named plaintiff in error. The plaintiff sued as the administrator of C. C. H. Burton, deceased, to recover upon an accident policy issued to the said Burton March 26, 1896, in the sum of $2,500, in case of death, with provision for a weekly indemnity for injuries not resulting in death; the policy to be in force for one year. Injuries self-inflicted, whether resulting fatally or not, were excluded by the terms of the policy. So also were all injuries received "while or in consequence of" the insured being affected by (among other things) "vertigo, fits, or any disease or bodily infirmity." One of the conditions was that no suit should be brought upon the policy unless begun within six months from the time of death or other injury. The insured came to his death on the 8th of September, 1896, from injuries received by him from falling off, or throwing himself off, a railroad train on the 4th of the same month. Freeman was appointed administrator of his estate by the proper probate court, and qualified as such, it being then supposed that Burton died intestate. Upon a representation that the estate was insolvent, the administration thereof was removed under a provision of a state statute into the chancery court. The insurance company having denied its liability, Freeman brought this suit in January, 1897, having received his letters of administration. On April 19, 1897, a will made by Burton, which had meantime been discovered, was probated, and it was ordered that letters testamentary be issued to Freeman, as administrator with the will annexed, and on the same day he qualified as such. But on the 26th of April, 1897, in the proceeding pending in the chancery court, the heirs and distributees of Burton entered into an agreement that the will should "be set aside, and for nothing held, and that the estate of said Burton shall be settled as if no will was ever probated." Thereupon the chancery court, reciting this agreement, ordered that it be "in all things confirmed and approved, and is made the decree of this court. The estate of said C. C. H. Burton will be settled in accordance with said agreement, and without any reference to the will, which has been probated." Meantime, by leave of the court, the declaration in the present suit was amended by making Freeman, as administrator with the will annexed, a party plaintiff in the case, and it was ordered that "this cause will hereafter proceed in the name of Freeman in his double capacity of administrator and of administrator with the will annexed." To the maintenance of the suit the insurance company interposed several defenses, as follows: (1) That the deceased came to his death by suicide; (2) that, for aught that appeared, the defendant's falling off the train was in consequence of vertigo, fits, or some disease or bodily infirmity; (3) that the suit abated upon the probating of the will of the deceased and the appointment of Freeman as administrator with the will annexed, and that upon the amendment of the declaration by bringing in Freeman as administrator with the will annexed a new suit was brought, and this more than six months after the death of the assured. Another question arose upon the pleadings, involving the effect of the representations made by the deceased upon which the policy in suit was issued. The twenty-second section of chapter 160 of

the Acts of Tennessee, passed in 1895, entitled "An act to govern and regulate the business of insurance, other than life and casualty insurance upon the assessment plan, and to repeal all laws, or parts of laws in conflict with this act," is as follows: "No written or oral misrepresentation or warranty therein, made in the negotiation of a contract or policy of insurance, or in the application therefor by the assured, or in his behalf, shall be deemed material, or defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter represented increases the risk of loss." For the insurance company it was contended that this statute was unwarranted class legislation, and was unconstitutional. These are the four principal points here presented for review. The case was tried before a jury. At the close of the testimony the defendant prayed for an instruction from the court that a verdict should be rendered in its favor upon the ground that it was clearly established that the death of the insured was by suicide. This instruction was refused, and a verdict was rendered in favor of the plaintiff. The insurance company brings the case here on writ of error.

Albert D. Marks, for plaintiff in error.

Jordan Stokes, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

1. It is contended that the evidence established beyond doubt that the deceased committed suicide, and that the court should, for that reason, have instructed the jury that the plaintiff was not entitled to recover. The evidence upon which this peremptory instruction was asked tended to show that for some time prior to his death Burton had been in straitened financial circumstances; that his property was heavily incumbered; that his house, which was mortgaged, and his personal property, which had been seized on execution, were about to be sold; that he had just before been making strenuous efforts to borrow money to tide him over his distress, but had failed; that he had forged a mortgage, and the certificate of acknowledgment thereof, on which he had made an attempt to borrow money; that he had, a year before, borrowed money upon false representations in regard to the freedom of his property from incumbrances; that he was being threatened with prosecution for these offenses; that he had four daughters living at home with him, who were dependent upon him for support; and that just before his death he had been making efforts to secure as much accident insurance as possible in addition to that which he was then carrying, and had succeeded in effecting enough to make in all $16,000. But it was also shown that he was a man of sanguine temperament, that he had been accustomed to keep considerable insurance upon his life and against accidents, and that after his death his property sold for enough to pay off all his debts. At the time of his death he was returning home from an ineffectual effort to raise money to save his home and personal property from forced sale. He was last seen before his injury upon the platform of the car on which he was riding, and not long afterwards was found by the side of the track, mortally injured. No doubt these circumstances, taken together, were well calculated to excite grave suspicion that the assured had thrown himself from the train with intent to destroy himself, but

109 F.—54

they were by no means conclusive; nor did they so clearly demonstrate that conclusion as to compel the finding by the jury that it must be so. Taking into account, in connection with all the circumstances above enumerated, the common instinct of mankind to hold on to life, and his strong affection for his daughters, and his earnest purpose to care for and protect them, we cannot say that it would be unreasonable to conclude that the death of the assured was accidental, and not purposed. It was a question upon which the minds of jurors might fairly be convinced that the fact was one way or the other. The legal presumption was against the fact of suicide, and the burden of proof was upon the insurer. In these circumstances there was no error in refusing the instruction requested.

2. It is further contended here that the jury should have been instructed that the burden of proof was upon the plaintiff to prove that the deceased did not come to his death in consequence of, or while suffering from, vertigo, fits, or other disease. But we are unable to find in the record any request by the plaintiff in error to instruct the jury upon this point, or any exception to such part of the charge as might inferentially imply the contrary of what is now insisted upon as the correct theory upon the subject. This being so, the question is not before us. It is useless to cite authority upon a proposition so well settled. Moreover, the bill of exceptions indicates that, when the case came to go to the jury, it was, without objection by either party, reduced by the court, so far as the facts were involved, to the single question whether the assured came to his death by suicide or not.

3. Another supposed error assigned is that the probate of the will revoked the plaintiff's letters of administration, and that the amendment by which he was permitted to proceed with the case as administrator with the will annexed operated to the effect of enabling him to bring a new suit, and that the six months allowed for bringing the action had expired before the amendment was made. If this question had arisen upon the early common law of England, it might be attended with difficulty on account of the widely different character of an executor from that of an administrator at that time. The executor derived his authority from the will. He was not an officer of the court, but was regarded as a trustee for the purposes declared by the testator, and could, before probate, do nearly all things required for the settlement of the estate except that he could not bring suits in the courts. The probate was for the purpose of definitely determining his character, and establishing it once for all, and enabling him to make profert of his authority in the manner required by the practice of the courts. Ordinary administration was in derogation of his rights as executor, which could not be thus taken away. And it was at one time held that such an administration was void upon the subsequent production and probate of a will. But later on the rule was modified so as to apply only to those cases in which administration had actually deprived the executor of some right, and not to those cases in which only the rights of other persons interested in the estate were concerned, in which

latter case the administration was voidable only. In this country the rule itself has been much further restricted, if not obliterated, by the effect of statutory regulations in all the states in regard to the settlement of estates of deceased persons. Here, for all the purposes of administering the estate, an executor is charged with the same duties as an administrator, although quite frequently he is, in addition, a trustee for certain purposes expressed by the testator. But those purposes are always subordinated to the paramount rights of creditors. Contrary to the English doctrine, he is here an officer of the court for the purpose of administering the estate, and cannot act without the sanction of his appointment by the probate court. Subject to certain limitations imposed by public policy, the testator may direct the disposition of his estate, and then the executor distributes the property according to the will, while an administrator distributes according to the statute. For the ordinary purposes of recovering the assets of the estate, the right and the method of procedure are precisely alike whether of an administrator or an executor, and the same defenses may be made by the debtor. An administrator differs from an administrator with the will annexed, not in respect to his right to collect debts due to the estate, but only in respect to the disposition of the assets. Each represents the estate in all controversies with its debtors. If, before the discovery of a will, administration is granted and proceeded with, that which is done before the probate is valid and effectual for the purposes of administration. Upon the probate of the will, the executor takes up the settlement of the estate where the administrator left it, and proceeds with the administration according to law; the will, by consent of the law, supplying some part of the method by which he shall dispose of the estate; the court in the meantime giving such directions as are expedient for disposing of the assets, and as the law combined with the purpose of the testator requires. Though the executor thus coming in is not in privity with the administrator in the sense that he receives the title by devolution of the estate from the latter, yet he is, to use the language of Chief Justice Shaw in Buttrick v. King, 7 Metc. (Mass.) 20, "his successor in the trust," and is bound by what he has done in the lawful execution of the powers of his appointment. The cause of action in the suit which Freeman brought as administrator was the identical cause of action which continued upon his appointment as administrator with the will annexed. No other modification of the suit took place, except that a peculiar characteristic was added to the status of the plaintiff. This affected him only as it touched the disposition of what he should collect. The issues remained the same. The proof in support and in defense of the claim would be the same, and the recovery would be held by him as the representative of the estate, and subject to the orders of the court. By the terms of the policy the sum insured was payable "to the legal representative of the assured." Freeman was at all times the representative of the assured, and payment to him by the insurance company, whether before or after the amendment of the declaration, would have been a clear acquit-

tance of the liability. In the case of Randolph v. Barrett, 16 Pet. 138, 10 L. Ed. 914, suit was brought against the defendant as administrator. He pleaded in abatement that he was not administrator, but was the executor of the will of the deceased. Thereupon the plaintiff moved to amend by striking out of the writ and declaration the words "administrator of all and singular the goods and chattels, rights and credits, which were of Algernon S. Randolph at the time of his death, who died intestate," and inserting "executor of the last will and testament of Algernon S. Randolph, deceased." The motion was granted, and the cause proceeded to judgment. The defendant sued out a writ of error, relying upon the ground that the amendment was improperly allowed. But the court said that, "whether he acted in one character or the other, he held the assets of the testator or intestate in trust for the creditors," and held that there was sufficient in the record to amend by, but that, independently of this, it was authorized by the thirty-second section of the act of 1789, which allows amendments of process and pleadings; that the granting of the amendment disposed of the plea in abatement; and that the amendment was properly allowed. It is obvious that the court regarded the cause of action as the continuing subject of the suit, and that the change in the official character of the defendant did not essentially affect it. If this be so as to a defendant, the reason is still stronger for its application to the case of a plaintiff; for in the latter case the position of the defendant is in no wise affected. The case referred to not only has the weight of authority, but is in harmony with later decisions, which have tended more and more to free the subject from the embarrassments which followed the attempt to carry the technicalities of the English doctrine into a system where, by the operation of statutes, an executor becomes an officer of the court, and as such administers the estate under the orders of the court in precisely the same way as an administrator does, except in respect to the specific trusts which the testator has designated, and which the law permits the executor to carry out. The defendant in such a case as this has no concern with those. It would be sacrificing justice to the merest form to permit the defendant to maintain this defense, where, in ignorance of the fact that there was a will, which might change the ultimate disposition of the fund, the suit had been lawfully brought within the time prescribed by the policy.

The Tennessee cases relied upon—Crofford v. Cothran, 2 Sneed, 491, and Flatley v. Railroad Co., 9 Heisk. 230—are not in point. In the former case the plaintiff had been permitted by amendment to change his suit from one in assumpsit to one in debt. Different defenses are open upon differing pleas in the one form of action from those in the other, and usually different limitations for actions are prescribed. In the other case a suit had been brought by a party who had no right at all to sue, and by the amendment a new party, who, in fact, had the right of action, was brought in. It is easy to see that there was no continuity of the cause of action, for none had existed during the time when the suit was by

the former plaintiff. Other cases in Tennessee seem to hold that, if the cause of action continues, the variation of the position of the respective parties in relation to the right to pursue it would not abate it, and that in such case the suit would be deemed to have been commenced at the time when it was originally brought. See Nance's Lessees v. Thompson, 1 Sneed, 321; Manufacturing Co. v. Vertrees, 4 Lea, 75; Burgie v. Parks, 11 Lea, 84. In the latter case a suit was brought against one of two executors upon a covenant of the testator. Pending the suit, and after the statute of limitations had run, the plaintiff was allowed to bring in the other executor by amendment. He pleaded the statute, but it was held that, the cause of action being the same, the amendment related to the commencement of the suit, and that the plea was not maintainable. It will be noticed that in that case the form in which the suit proceeded was changed to an action against two defendants jointly, but that, as here, the essential character and purpose of the suit were preserved. In Person v. Casualty Co., 35 C. C. A. 117, 92 Fed. 965, an administrator appointed by the probate court, who had given bond, but had not fully qualified, commenced a suit upon a policy of the company issued to the decedent. His appointment was afterwards canceled, and Person was appointed administrator, and by the order of the court in which the suit was pending was substituted as plaintiff. The defendant moved to dismiss the suit upon the ground, among others, that the policy required the suit to be begun within six months from the time of the death, and that Person had no standing in court until he was substituted as plaintiff, which was more than six months after the death of the assured. This motion was granted, the suit was dismissed, and the plaintiff brought a writ of error to this court. The judgment was reversed. Judge Thompson, delivering the opinion of the court, in answer to the objection that the suit was illegally brought by the administrator in violation of a statute of the state, and conferred no jurisdiction upon the court, after referring to section 4589 of Shannon's Code, Tenn., which reads as follows: "No civil suit shall be dismissed for want of necessary parties, or on account of the form of action, or want of proper averment in the pleadings, but the courts shall have the power to change the form of action, strike out or insert in the writ and pleadings the names of either plaintiffs or defendants, so as to have the proper parties before the court, and to allow all proper averments to be supplied, upon such terms, as to continuances, as the court, in its sound discretion, may see proper to impose,"—says:

"The question is not whether the suit could have been maintained in Lee's name, nor whether Lee was guilty of a misdemeanor in bringing the suit, but whether it should abate because of Lee's want of authority to prosecute it. The defendant was in court to answer to a cause of action in favor of the estate of Hadson, which could only be prosecuted by the administrator of the estate; and, Person having been appointed and qualified as such administrator in the place and stead of Lee, the court substituted him for Lee as plaintiff in the case."

The present case is distinguishable from that class of cases of which Sicard v. Davis, 6 Pet. 124, 8 L. Ed. 342, is a leading one.

That case was an action of ejectment. The plaintiff laid his demise as one from Sicard. He was permitted to amend by substituting a demise from other parties, who had derived title from Sicard's grantor before the grant to Sicard. This was permitting the plaintiff to assert a different title, depending upon the determination of wholly new issues. It was substituting a new cause of action. A comparison of this case with that of Randolph v. Barrett, 16 Pet. 138, 10 L. Ed. 914, develops the distinction between the cases where, by an amendment, a new cause of action is asserted, and those where the amendment rests upon the cause of action which is already the subject of the suit, and is designed to facilitate the prosecution of the suit to a determination of its merits. We think that in the present case, the cause of action remaining the same, that the modification of the representative character of the plaintiff did not destroy the continuity of his representation, that the suit in which the judgment was rendered was therefore a continuation of the one originally commenced, and not a new one begun at the time when the declaration was amended.

There is another view upon which it should seem that the defense founded on the limitation of the time contained in the policy within which suit must be brought ought not to be sustained. When the contract of insurance was made, the company knew (as it must be presumed) that the law of Tennessee provided that in the suit which it required to be brought the court would be authorized to permit new parties to be brought in by amendment. It was in the contemplation of the parties that this might happen, and it could not have been expected that such a suit would not be subject to the general regulation applicable to all suits. Now, the statute was enacted for the very purpose of mending all such defects in the constitution of the suit as would permit it to go on to judgment, and one of such defects was that of proper parties. Manifestly, it was intended that the suit should continue, and not abate. If the parties are held bound to have contemplated such a contingency as the exercise of the power of the court to permit the amendment, the defendant ought not now to be heard to say that a suit lawfully brought to recover upon this policy for the benefit of the estate should be defeated by the event which made the amendment necessary and proper. It would be difficult to conceive of a case where such an amendment would be more just and proper. The defendant imposed a short limitation. By it the suit could not be brought within three months, but must be within six months. Its object, as we must suppose, was to enable the company to gather the evidence, and prepare for its defense, while the matter was fresh, and to have a speedy determination of its liability. This object was accomplished by the commencement of the suit, and it was a suit which, when begun, suffered no delays which were not incident to other suits which might be brought in the same court. If such an amendment could not be made except with the consequences of a new suit, then brought, the defendant in such a case would escape all liability if it should happen that the will should not be found within six months after the death of the insured, un-

less the administrator should have brought suit and enforced collection within the three months allowed by the policy for that purpose. We see no difficulty in holding that the suit required by the policy to be brought intended a suit subject to the exercise of the power of the court to remodel it as the law permitted and justice should require.

4. A question was raised by the defendant upon the pleadings in respect to the effect of the alleged falsity of the misrepresentation of the assured in his application for insurance that he had never had fits or disorders of the brain; the contention of the defendant being that, whether or not the representation was made with an actual intent to deceive, or the existence of the fact increased the risk of loss, the falsity of the representation defeated the policy. This contention was made upon the ground that section 22 of chapter 160 of the Acts of Tennessee of 1895, declaring that such misrepresentation, if not made with intent to deceive, and the matter thereof did not increase the risk of loss, should not be deemed material, or make the policy void, was in violation of section 8 of article 11 of the constitution of Tennessee, which reads as follows:

"The legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual, or individuals, rights, privileges, immunities, or exemptions, other than such as may be by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law."

The ruling of the court, as we gather from the record, upheld the validity of the statute, and this ruling is now assigned as error. It is insisted that the statute in question is "a partial law, and vicious class legislation," because, as is said, it exempts from its burdens life and casualty insurance companies conducted on the assessment plan. But the gravamen of the complaint is rather that the statute imposes a burden upon this insurance company which is not imposed upon other companies engaged in a similar business. And it is charged that the classification of life and casualty insurance companies doing business on the assessment plan on one hand and mutual fire insurance companies, life and casualty insurance, and all other insurance companies on the other, and denying a privilege to one which it gives to the other class, is without any imaginable reason or justification. In so far as the law can be said to cast a burden upon mutual fire insurance companies which it lifts from "mutual life and casualty insurance companies," the mutual fire insurance companies themselves are the only companies who are in a position enabling them to raise the objection, if it be one. The defendant in the court below, not being a mutual fire insurance company, has no legitimate ground for complaint that another company is unjustly burdened. Only the party injuriously affected by unconstitutional legislation can be heard to allege its invalidity. The question, therefore, comes to this: whether it was competent for the legislature to change the rule of law in respect to the liability of a casualty company insuring for a fixed premium upon its policies thereafter to be issued, without at the same time

imposing the same liability upon the contracts of mutual life and casualty companies. And we are of opinion that it was. Legislation is not open to the objection here made, provided it affects all persons alike who are within the description of those mentioned in the statute. The decisions of the supreme court upon that clause of the fourteenth amendment to the constitution of the United States which forbids the denial by any state to any person within its jurisdiction of the equal protection of the laws are strictly pertinent, there being a close similitude between that clause and the provision of the Tennessee constitution in question. Those decisions are very numerous, and illustrate the subject by many examples. We cite at random a few of the cases, which sufficiently indicate the general doctrine. Railroad Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; Magoun v. Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; Insurance Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; Railroad Co. v. Matthews, 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909. In the last of these, many of the recent cases are collected. The rule declared in those cases in respect to the extent to which discrimination in classifying the objects of legislation may rightfully proceed is the same as that which we think applicable to the case before us. What this declaration of the constitution of Tennessee means is that no discrimination shall be made in respect of burdens and privileges between persons whose interests and relations to the general public are so far identical that they would be affected in the same way by legislation which should comprehend all such persons. The division of such persons into classes, and making one law respecting burdens and privileges for one class, and a different one in regard to the same subjects for another class, would be purely arbitrary, and it is such discrimination that the constitution forbids. We accept the doctrine as stated and approved by the supreme court of Tennessee in Stratton's Claimants v. Morris' Claimants, 89 Tenn. 497, 534, 15 S. W. 87, 97, 12 L. R. A. 70, 80, "that, whether a statute be public or private, general or special in form, if it attempts to create distinctions and classifications between the citizens of the state, the basis of such classification must be natural, and not arbitrary." But the power of classification will be upheld when such classification proceeds upon a difference which has a reasonable relation to the object sought to be accomplished. The distinction between insurance for a fixed premium, where the parties have no community of interest, and mutual insurance, where the insured is also the insurer, and shares in the management of his company, participates in the making of its by-laws, whereby the terms of its contracts with its members are prescribed, where the insurance is at its actual cost, and no profits taken out by a stranger, is not arbitrary. The nature and the incidents of the business of the two methods vary greatly. The laws of Tennessee in regard to mutual insurance companies contained provisions which are common to those of many of the states, and under which the relations of the member and the company were those above described. The legislature might well think it not unreasonable that the members of

such associations should be left to determine for themselves whether they would adhere to the common-law doctrine in respect to the consequences of a misrepresentation of facts, though made without any fraudulent purpose, and there was no increase of the risk by the untruth of the representation, or whether they would adopt the rule which the legislature proceeded to lay down upon that subject in respect to companies insuring upon the other plan. The rule itself was undoubtedly prescribed from a sense of the harshness of the former doctrine, and was designed to prevent the less astute of the parties from falling into a pit through having mistakenly made some representation the falsity of which did not increase the risk of loss. It is of a kind not uncommon in legislation for alleviating the perils to which the insured is often exposed. In mutual insurance the insured determines for himself whether he will expose his insurance to such hazard as would ensue from an incorrect representation. It was said by the supreme court, in considering the obligatory effect upon a member of one of the articles of a mutual insurance company, in Korn v. Society, 6 Cranch, 192, 3 L. Ed. 195, that:

"Whether [it was] just or unjust, reasonable or unreasonable, to all concerned, was certainly a mere matter of speculation, proper for the consideration of the society, and which no individual is at liberty to complain of, as he is bound to consider it as his own individual act. Every member in fact stands in the peculiar situation of being party of both sides,—insurer and insured."

We think there was enough of dissimilarity in the character of the business of insurance for a fixed premium and that of mutual insurance to justify the legislature in laying down a rule regulating the former without also imposing it upon the latter. These views lead to an affirmance of the judgment. Judgment affirmed.