CITIZENS' STATE BANK OF COLFAX, Appellee, v. VICTORIA SANATORIUM, Appellee, and HORACE S. HOLLINGSWORTH, Administrator, et al., Appellants.

**EXECUTORS AND ADMINISTRATORS:** Management of Estate —Release of Liens—Jurisdiction of Court. The probate court, on a good-faith application by an executor or administrator, and *without notice to heirs or devisees*, has jurisdiction to enter an order directing its said officer as to the manner in which to proceed in order to best preserve and protect the estate. So held where the court directed the administrator to release mortgage liens in favor of the estate. Section 3265, Code, 1897.

PRINCIPLE APPLIED: See No. 2.

**ESTOPPEL:** Equitable Estoppel—Acts Done or Omitted, and Change of Position. Acceptance by heirs and devisees of the benefits of an order of the probate court, with failure to interpose any objections to said order until other parties, in reliance on said order, had changed their position, works an estoppel to then object to said order.

PRINCIPLE APPLIED: An estate consisted of stock in an incorporated hotel company, and of first mortgage liens on the property of the same company. The company was a going concern, but was heavily indebted on unsecured claims to a bank, which was pressing for payment. The urgent question arose as to how to best preserve the value of the corporate stock and, consequently, the interest of the estate. The stock of the hotel company not owned by the estate, was owned or contracted for by one of the devisees of the estate. The value of the hotel property was believed to be largely in excess of all claims and mortgage liens. *Without notice to any of the heirs or devisees* of the estate except to the one owning stock, the administrator, in good faith, made application to the court and asked for authority to release the first mortgage liens held by the estate, in order that a first mortgage lien might be executed to the bank on its unsecured claims. The court granted the order. The estate secured an extension on the claim due the bank, and also a reduction in interest. Some considerable time after the mortgage was executed, and after a second extension had been granted, the bank commenced foreclosure proceedings, at which time the heirs for the first time attacked the validity of the said order because of lack of notice to them.

*Held,* (1) the application being made in good faith, the court had jurisdiction to enter the order, and (2) whatever right the heirs may have had to question said order was lost by their acceptance of the benefits thereof and their long delay in objecting thereto.

*Appeal from Jasper District Court.—*K. E. Willcockson, Judge.

Wednesday, March 14, 1917.

Suit in equity for the foreclosure of a mortgage against the sanatorium company. Hollingsworth, as administrator, and others, intervened, claiming that they, or the estate which they represent, hold a lien prior to plaintiff's mortgage, and they asked that their prior lien be protected. The trial court, upon issues joined, granted the relief prayed by plaintiff, and dismissed the petition of intervention, and interveners appeal.—*Affirmed.*

A. D. Pugh, for appellants.

C. S. Cooter and J. E. Cross, for appellees.

Deemer, J.—The defendant company is a corporation organized under the laws of this state, and the owner of a hotel or sanatorium in the town of Colfax. Prior to his death, James Brown owned 10 shares of the stock of this corporation; and Florence Sherbon, his daughter, owned 7 shares in her own right, and had a contract for the purchase of the remaining 6 shares. There were 23 shares outstanding, of the par value of $1,000 each. Brown was the president of the corporation for some years prior to his death, and held that position when he died. The daughter, Florence Sherbon, was always active in the affairs of the corporation, and at the time of Brown's death was its secretary. The interveners Sherbon are the minor children of Florence, and appear by their mother, as next friend. The other interveners, Brown, are the widow and an adult child of James Brown's.

1. Executors and Administrators: management of estate: release of liens: jurisdiction of court.

On May 16, 1906, the corporation, needing money, borrowed of the Iowa County Loan & Savings Bank the sum of $3,000, the president and secretary signing the notes and also a mortgage on the property made to secure the notes. Brown also signed the notes personally. On December 3, 1910, Brown took an assignment of the note and mortgage and held it at the time of his death.

On the same day that the loan was made from the bank, the corporation, by its president and secretary, executed another note, in the sum of $2,500, to James Brown, and secured it by a second mortgage upon the property. This note and mortgage were also held by Brown at the time of his death. Brown died in the year 1913, and Hollingsworth was appointed administrator with will annexed. By the terms of his will, Brown gave to a nephew and niece, not made parties to this suit, one share of sanatorium stock; to other nephews and nieces, not made parties, $100 each; and the remainder of his property, he gave to his daughters, Maud Brown and Florence Sherbon, and the children of Florence, share and share alike. Hollingsworth was elected a director and president of the corporation, after his appointment as administrator, and Florence Sherbon continued to act as secretary. In February of the year 1914, the corporation was indebted to plaintiff in the sum of $16,426.43. Part of this indebtedness bore 7 per cent interest and part 8 per cent, and none of it was secured. This indebtedness was due, and, as it was unsecured by mortgage or otherwise, plaintiff bank became uneasy regarding this loan and was threatening suit. They consulted with Hollingsworth and Mrs. Sherbon, and, as the sanatorium was then a going concern, although largely in debt, they felt that something should be done to prevent a sacrifice of the property. It was considered by some to be worth $40,000 at that time. The sanatorium management and the Brown estate were asking for an extension of time

to pay plaintiff's debt, and it is claimed that they proposed to plaintiff that they would secure a release of the mortgages then held by the Brown estate, and give mortgages to plaintiff which would be first liens on the property, and thus secure time in which to pay the indebtedness, meanwhile keeping the property in operation. There may be some doubt as to who first made the proposition; but, no matter who initiated the thought, it was agreed that this should be done. As the notes and mortgages held by Brown upon the property were personal property, and were in the hands of the administrator, it was deemed advisable to secure an order of court allowing the administrator to release the Brown mortgages, preliminary to the securing of plaintiff's debt by mortgage on the property; and accordingly an application was made by Hollingsworth to the probate court for authority to make these releases. As we understand it, no notice of this application was served upon any of the heirs or devisees, but Hollingsworth and Mrs. Sherbon appeared at the time of hearing and gave testimony before the court, with reference to the situation. They both recommended the scheme to the court, and, so far as shown, in absolute good faith. After a hearing, the court granted the administrator's application for an order to release the Brown mortgages. Thereupon, new notes were made to plaintiff, which extended the time of payment and provided a somewhat different rate of interest, and a mortgage was made by the officers of the sanatorium company upon the property to secure these notes. Acting under the court's order, the administrator released the previous Brown mortgages of record. Upon maturity of these last mentioned notes, another extension of the time of payment, for one year, was granted by the bank; and at the expiration of that time, the sanatorium company being still unable to pay, this action to foreclose was commenced against the sanatorium company. This company has no

defense to either notes or mortgages; but the interveners, widow and adult daughter of Brown, deceased, Hollingsworth, administrator, Mrs. Sherbon and her minor children, intervened, setting up the original Brown mortgages, claiming that they were prior, in point of time, to plaintiff's mortgage; that the release of these Brown mortgages was of no effect and should be disregarded; and they also claimed that the order in probate, giving the administrator authority to release the Brown mortgages, was of no effect and void, because made without notice to all the heirs and devisees, and for other reasons, and they asked that this order be set aside and held for naught.

There is no claim of fraud in obtaining the order, and it is practically conceded that, when this order was made, it was generally assumed that the property was of sufficient value to take care of the Brown notes, as well as plaintiff's indebtedness, provided it could be sold at private sale and as a going concern. The trouble was due to the fact that plaintiff's indebtedness was unsecured, and that good banking demanded some kind of security. No one questioned the validity of the court's order, or the release of the Brown mortgages, until this suit of foreclosure was commenced.

As will be observed, the stock in the corporation was held by Hollingsworth, administrator, and Mrs. Sherbon, and their object seems to have been to protect this stock. The mortgages to Brown were held by the administrator, to be administered by the administrator according to the terms of the will. The property is now said to be worth not more than $25,000; so that, if plaintiff's debt and the indebtedness to Brown is paid, there will be little or nothing left for the stockholders, and this would be true no matter whether the release of the Brown mortgages be upheld or sustained. The stockholders are not entitled to anything until the corporate debts are paid, and this is true whether the debts be secured or unsecured. The real question in

the case, then, is the priority of plaintiff's lien over that of the Brown estate, and this depends upon the validity of the release of the Brown mortgages. If these are invalid, then interveners are entitled to have the Brown mortgages treated as a first lien, and given priority over plaintiff's mortgage. If this order be not set aside, then plaintiff is entitled to the first lien, and whatever remains will be paid to the administrator to apply on the debts of the corporation, and after these are all paid, the remainder will be paid to the stockholders.

We do not understand that Hollingsworth, as intervener, is challenging the order made on his application, save in so far as is necessary for his own protection; but the widow and some of Brown's heirs are insisting that the order is void and should be set aside and held for naught. They insist that the administrator had no authority to apply for the order, and that the court had no power to grant it even were it properly applied for; that the order was made through mistake, or inadvertence, and should be set aside; and that the plaintiff bank was not justified in any event in relying on the order, or on the releases made pursuant thereto. Hollingsworth, as administrator with will annexed, not only representing the estate, but also charged with the duty of carrying out the terms of the will, and having in his charge all the personal effects of the deceased, had the right, as we think, when a question arose as to the interests of that estate,—that is to say, having a question as to whether it would be wise to try to protect corporate stock, or to take a mortgage or lien upon real estate of the corporation,—to make application to the court for directions as to how to proceed, and he was not required to give notice to the heirs or devisees in order to give the court jurisdiction. Of course, he was required to act in good faith, and to present the facts to the court; but he should not be held liable or the order set aside be-

cause of mistake of judgment on his part, or of mistake of the court, unless the latter was superinduced by the fraud of the administrator. *Van Aken v. Clark,* 82 Iowa 256; *Ryan v. Hutchinson,* 161 Iowa 575, 584; *Jenkins v. Shields,* 47 Iowa 708; *Scully v. Scully,* (N. Y.) 94 N. E. 195; *Cowins v. Tool,* 36 Iowa 82.

2. ESTOPPEL: equitable estoppel: acts done or omitted, and change of position.

While both Hollingsworth and Mrs. Sherbon may have been mistaken as to the value of this property at the time the administrator secured the order, there is nothing to indicate fraud on the part of either. The bank was pressing its claim, and they, in order to secure what·they thought was an advantage to the stockholders and to the Brown estate, undertook to arrange plaintiff's claim so that they could secure him, and work out advantages both to the estate and to the stockholders. The bank was innocent of any wrong, and it extended the time of payment and gave to the estate, and to Mrs. Sherbon, other advantages on the strength of the release of the Brown mortgages, without notice of any fraud or mistake. Interveners had these advantages and made no objections until the time came for payment. They could not then·put plaintiff in its original position. Upon discovery of the fraud, or mistake, if there was any, they should have acted promptly. This they did not do, but, having all the advantages which they desired, they should not now be allowed to repudiate their agreements. The widow was attempted to be cut off by will, and on the face of the record she has no ground for complaint. The minors who were given devises under the will were not necessary parties to the application made by the administrator, and no specific devises were made to them. Other devisees under the will, some of whom were given specific devises, are not ·made parties. But as we have already indicated, when the administrator was faced with the problem of trying to save the property from a sale

under execution by the plaintiffs, he had the right in good faith to present to the court any reasonable plan for avoiding such a result, and having presented the matter to the court, and having had an order from the judge thereof, he was justified in relying thereon, even though both he and the court were mistaken as to the final effect thereof. We, of course, are treating the case on the theory that no fraud was intended or perpetrated by any of the parties to the order. It is true that counsel for the plaintiff bank presented the application for the administrator and was instrumental in procuring the order, but this is not in itself sufficient to set it aside.

Finding no fraud and no mistake, save, perhaps, in the value of the property and the efficacy of the plan, we see no reason for setting aside the order upon a post mortem examination. The decree must therefore be, and it is,— *Affirmed.*

The foregoing opinion was prepared by Justice Deemer, now deceased, and is adopted as the opinion of the court.

GAYNOR, C. J., LADD, EVANS and PRESTON, JJ., concur.