## IN RE ESTATE OF FRED G. MEINERT.

**TAXATION:** Inheritance Tax—Failure of Executor to Pay Tax—Effect. When the *state* allows an estate to be fully settled and the executor to be duly and finally discharged without the payment of an inheritance tax, and makes no application to open up the accounts of the

executor, it may not thereafter enforce the statutory personal liability of the executor to pay said tax. This is true on two fundamental propositions, to wit: (1) That the court, being prohibited by statute from discharging the executor until the tax is paid, must be presumed, in entering such discharge, to have found that no tax was due; and (2) that the state, by designating the court as its special statutory representative, will not be permitted to deny such presumption.

**Headnote 1:** 37 Cyc. p. 1576.

**Headnote 1:** L. R. A. 1915C, 615; 26 R. C. L. 235.

*Appeal from Plymouth District Court.*—B. F. Butler, Judge.

May 10, 1927.

Rehearing Denied October 1, 1927.

Appeal by the executrix of the estate of Fred G. Meinert, deceased, from a judgment allowing a claim made by the state treasurer, based upon the alleged failure of Meinert to collect a collateral inheritance tax from the estate of Kathrina Homan, deceased, of which Meinert was executor.—*Reversed.*

*Kass, Zink & Kass,* for appellant.

*Ben J. Gibson,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *George W. Sturges,* for appellee.

Morling, J.—Kathrina Homan died testate August 25, 1905. Fred G. Meinert was by her will nominated executor, and on admission of the will to probate, October 11, 1905, was appointed and qualified as executor. Letters of administration were issued to him. He published notice to creditors November 5, 1905, and filed his final report February 3, 1910. The record recites a stipulation:

"That decedent served notice of the time and place fixed by the court upon the devisees named in the will of Kathrina Homan, as ordered, and that, on the 8th day of February, 1910, the court ordered and adjudged the estate of Kathrina Homan settled and closed, and discharged the decedent, as executor,

from further duty, and released his bond, and the estate was closed.''

By the will, bequests were made to five stepchildren. The record does not show the character of the estate, whether real or personal or both, except that a power of sale, division, and distribution contained in the will would give rise to the inference of the existence of real estate. By the law in force at the time of Mrs. Homan's death (Chapter 28, Laws of the Twenty-sixth General Assembly), bequests to stepchildren were not exempt from collateral inheritance tax. This statute was so amended as to exempt them by Chapter 54, Acts of the Thirty-first General Assembly (1906). The amendment bore no publication clause, and took effect July 4, 1906. The one year for filing claims and closing the estate did not expire until November, 1906, and, as noted, the estate was not closed until February, 1910. Meantime, the Code Supplement, 1907, was published. By its provisions (Section 1467), bequests to stepchildren were not subject to collateral inheritance tax. We make reference to this as a possible explanation of the error or neglect of the court, the executor, and the administrative officers of the state now to be mentioned. It is stipulated that neither the state nor the state treasurer filed any claim for collateral inheritance tax against the estate of Kathrina Homan, and that the collateral inheritance tax has never been paid. No claim upon Fred G. Meinert for the tax was ever made during his lifetime. Fred G. Meinert died March 7, 1925. His will was admitted to probate April 21, 1925. The present claim was filed April 12, 1926. No charge of fraud against Meinert in the settlement of the estate or in procuring his discharge is made.

By Section 1, Chapter 28, Acts of the Twenty-sixth General Assembly:

''All property * * * which shall pass by will * * * other than to or for the use of the father * * * shall be subject to a tax of five per centum of its value, * * * and all administrators, executors, and trustees, * * * shall be respectively liable for all such taxes to be paid by them respectively, except as herein otherwise provided, with lawful interest as hereinafter set forth, until the same shall have been paid. The tax aforesaid shall be and remain a lien on such estate from the death of the decedent until paid.''

By Section 8:

"Every executor, administrator, or trustee having in charge or trust any property subject to said tax, and which is made payable by him, shall deduct the tax therefrom or shall collect the tax thereon from the legatee or person entitled to said property, and he shall not deliver any specific legacy or property subject to said tax to any person until he has collected the tax thereon."

The tax is not a tax (though it is a lien) on the property itself, or upon the estate, but upon the succession or right to take by succession. *Wieting v. Morrow,* 151 Iowa 590; *In re Estate of Annis,* 195 Iowa 493, 496; *In re Estate of Thompson,* 196 Iowa 721. The tax is not upon the executor, or upon his property or upon his right. The tax is not his. His is the duty of deducting or collecting. If he is unable to collect, he is not personally liable. *In re Application of Meyer,* 209 N. Y. 386 (103 N. E. 713). The personal liability imposed upon the executor therefor is for breach of duty, and the amount of the tax, with interest, is the compensation or indemnity fixed by the statute for such breach. That is, it is the damages measured and fixed by the statute. 2 Words & Phrases 1812; 1 Idem (2d Series) 1192. The tax has not been paid. It remains a lien upon the Homan estate. The state is here, therefore, as a suitor, to recover the statutory measure of damages from the executor for breach of duty.

The state can operate only through its three departments of government. By Chapter 28, Acts of the Twenty-sixth General Assembly, the court, under the circumstances laid down in Section 4, is required, upon its own motion, to cause the estate to be appraised, and by Section 6, upon its own motion or on the application of the treasurer of state, to fix compensation of executors or trustees. Sections 14 and 15 read as follows:

"Section 14. No final settlement of the account of any executor, administrator, or trustee shall be accepted or allowed unless it shall show, and the court shall find, that all taxes imposed by the provisions of this act upon any property or interest therein belonging to the estate to be paid by such executors, administrators, or trustees, and to be settled by said account, shall have been paid, and the receipt of the treasurer of state for such tax shall be the proper voucher for such payment."

"Section 15. The district court having either principal or

ancillary jurisdiction of the settlement of the estate of the decedent shall have jurisdiction to hear and determine all questions in relation to said tax that may arise affecting any devise, legacy, or inheritance, or any grant or gift under this act, subject to appeal as in other cases, and the treasurer of state shall in his name of office represent the interests of the state in any such proceeding."

Chapter 37, Acts of the Twenty-seventh General Assembly (1898), makes it the duty of the county attorney to report to the treasurer of state the death of all persons whose estates are liable to the tax. Though the ultimate source of an executor's appointment is in the will, the will must be probated, and the ultimate appointment of the executor made by the court.

"The executor or administrator is a mere officer of the law." *Hatheway v. Weeks,* 34 Mich. 237, 243.

Administration of decedents' estates is conducted under the authority and supervision of the court.

"The person so appointed is under the control and power of the court * * *. The court having jurisdiction of the estate may do all things necessary for its proper administration and settlement, and, to this end, may appoint such administrators as are authorized by law and necessary to the discharge of its probate powers." *Crossan v. McCrary,* 37 Iowa 684, 686.

The executor or administrator is an officer of the court. *Daviess County Bank & Tr. Co. v. Wright,* 129 Ky. 21 (110 S. W. 361, 17 L. R. A. [N. S.] 1122); *Shewell v. Keen,* 2 Whart. (Pa.) 332 (30 Am. Dec. 266); *Fidelity & Cas. Co. v. Freeman,* 48 C. C. A. 692 (109 Fed. 847, 851); *Rothschild v. Hasbrouck,* 65 Fed. 283, 285. The department of government through which the state acts in the collection of collateral inheritance taxes, as appears from Sections 14 and 15, above quoted, is, in large part, the judiciary. The duty is imposed upon the court to hear and determine all questions in relation to the tax, subject to appeal, and upon the treasurer of state to represent the state's interests. By the express provision of the law, no final settlement of the executor's account shall be allowed "unless it shall show, and the court shall find, that all taxes imposed by the provisions of this act * * * and to be settled by said account, shall have been paid." The state, therefore, reposed in the court the duty of determining whether any tax was due, and of denying the ac-

count and the executor's discharge until it had so found. We cannot presume, nor, for the reasons that will be later adverted to, do we think the state ought to be heard to contend, that the court, the department of its government to which it intrusted the determination of its right to the tax and the securing of the payment thereof, did not perform its duty. The allowance of the executor's account and his discharge, therefore, imply that the court found that the bequests to the stepchildren were not subject to collateral inheritance tax. It is true that the tax accrued at the date of Mrs. Homan's death, August 25, 1905. 37 Cyc. 1574. The law in force at that time imposed a tax upon bequests to stepchildren. The repeal of the law imposing such tax was not made retroactive, and would not operate to remit taxes accrued. 36 Cyc. 1225; 37 Cyc. 1558; *State ex rel. Pierce v. Slusher,* 119 Ore. 141 (248 Pac. 358). See, also, *State v. O'Connell,* 170 Minn. 76 (211 N. W. 945). At the time the repeal took effect, the executor was not in default in the performance of his duties. His executrix argues that the statute as to him was penal, but we need not pause to consider the effect of the repeal upon the duty of the executor to collect the tax and his liability to the state for damages for not collecting it. If the estate remained liable for the tax, or if the executor still rested under the duty of collecting it and of responding to the state for not collecting it, the case is merely one of an erroneous determination by the court in allowing his account and decreeing his discharge, remediable only on application to open the account and appeal. By Section 3399, Code of 1897 (Section 12051, Code of 1924), "accounts settled in the absence of any person adversely interested, and without notice to him, may be opened within three months on his application;" and by Section 3400, Code of 1897 (Section 12052, Code of 1924), "upon final settlement, an order shall be entered discharging him from further duties and responsibilities." The executor gave the notice of his final report which the statute required. No other was necessary. *VanAken v. Clark,* 82 Iowa 256. The state in fact was represented, because it was the duty of the court itself to determine whether a tax was due, and if so, to require its payment. The facts were before it. The executor was the officer of the court, entitled to rely upon, and fully protected by, the directions of the court. 23 Corpus Juris 1174; *In re Estate of Spoo,* 191 Iowa 1134; *Cowie v. Stroh-*

*meyer,* 150 Wis. 401 (136 N. W. 956). The state has not applied to have the account opened. The account after three months could be reopened on application, only upon a showing of fraud or mistake such as would justify the setting aside of judgments; and the fraud or mistake would have to be something extrinsic or collateral to the accounting, and not a fraud or mistake in the accounting itself. *Bradbury v. Wells,* 138 Iowa 673; *Cowins v. Tool,* 36 Iowa 82; *Kows v. Mowery,* 57 Iowa 20; *Patterson v. Bell,* 25 Iowa 149. The executor may not be held liable for the mistake of the court not induced by his fraud. *Citizens' St. Bank v. Victoria Sanatorium,* 179 Iowa 671, 677.

As has been said, the state acts through its departments of government. The state undertakes the administration of the estates of deceased persons through its courts, appoints the executor or administrator, and supervises and instructs him. The state also requires county attorneys to make reports of estates subject to collateral inheritance tax, and requires the treasurer of state to represent it. The court is the department of state that is invested with jurisdiction to determine the question of liability to tax, and that department is required to keep the estate open so long as inheritance taxes are unpaid. The state has a lien on the estate for the tax. The court discharged the executor. The executor releases the funds in his hands which should pay the tax, and distributes or allows them to be distributed in reliance upon the action of the state itself, through its court. The case is apparently one of mere error, in thinking that the bequest to the stepchildren was not subject to the tax. Under the peculiar facts and circumstances of this case, we think the error was occasioned by or was that of the state itself. It is against conscience for the state, under such circumstances, after the long lapse of time and the death of the executor, to demand of the executor's estate the tax or its equivalent in damages.) It is said in *State v. Executor of Buttles,* 3 Ohio St. 309, 319:

"It follows, from these conclusions, that the loan made in this case was wholly unauthorized, and that the state was not, at the time the contract was made, bound by it. Whether she could lawfully make herself a party to it and claim the benefit of its provisions, and whether she has actually done so, are entirely different questions. We agree that she can only do so upon the same terms, and subject to the same restrictions, as a private

individual. When she appears as a suitor in her courts, to enforce her rights of property, she comes shorn of her attributes of sovereignty, and as a body politic, capable of contracting, suing, and holding property, is subject to those rules of justice and right which, in her sovereign character, she has prescribed for the government of her people. * * * It would, indeed, be a gross absurdity that the government, through its courts, should aid the subversion of its own policy; assault those principles of virtue and morality it is created to uphold; or itself overthrow the law which it compels others to observe, and which it was made to enforce.''

See, further, *People v. Canal Board,* 55 N. Y. 390; *State ex rel. Smyth v. Kennedy,* 60 Neb. 300 (83 N. W. 87, 88); *State ex rel. Hord v. Board of Com.,* 101 Ind. 69. The doctrine of *res adjudicata* is applicable to the state. *State ex rel. Smyth v. Kennedy,* supra.

The Supreme Judicial Court of Massachusetts in *Attorney General v. Rafferty,* 209 Mass. 321 (95 N. E. 747), held that an executrix distributing in good faith property subject to inheritance taxes, without making any reference to the tax, is not protected by the decree of distribution. The facts do not appear in the report of the case, nor are the statutes of the state set out. The court bases its decision on *Attorney General v. Stone,* 209 Mass. 186 (95 N. E. 395), which in turn cites *In re Estate of Lander,* 6 Cal. App. 744. The opinion in the latter case was rendered in the probate proceedings. That in the *Stone* case was rendered in a proceeding against one of the distributees, to enforce payment of the tax, in which he relied upon the action of the probate court in settling the administration accounts. If the proceedings before us were against the legatees, a different question would be presented. It may be surmised that in the *Rafferty* case the defendant was not only an administrator or executor, but a distributee. However this may be, we cannot accept these decisions as authority in the case now under consideration.

In *Montgomery v. Gilbertson,* 134 Iowa 291, the pivotal question was said to be, Was the estate so far unsettled that the state treasurer had authority to call for the inheritance tax? It was held that:

''The claimed settlement and distribution made by the executors within a few days after their appointment did not deprive

the court of jurisdiction over the funds, nor relieve the executors from liability to creditors or others interested in the estate. * * * The probate court had full power over the estate as soon as the will was probated, if not before, and the actions of the executors were subject to its approval and control until their final discharge. No matter what the provisions of the will, the estate was in court for settlement and distribution, and the executors gained their power and authority from the law, and not alone from the provisions of the will. * * * the state was, in a sense, a creditor, and had the right to insist that the estate be settled according to law. In contemplation of law, it was unsettled when the inheritance tax law became enforcible, and this is the end of the case.''

In the case before us, the estate was settled and the executor discharged by the act of the state itself, by one of its departments, through which alone the state may act. The case is not one merely of oversight of a state official, nor one involving merely the statute of limitations or laches, by which the state is ordinarily not bound.

The judgment is—*Reversed.*

EVANS, C. J., and DE GRAFF, ALBERT, and KINDIG, JJ., concur.