## ATTORNEY GENERAL *vs.* RALPH E. STONE.

Suffolk.   March 16, 1911. — May 19, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Tax,* On successions and inheritances.   *Constitutional Law.   Executor and Administrator.   Res Judicata.   Interest.*

The tax upon successions and inheritances is an excise tax, imposed not only upon the right of the owner of property to transmit it after his death, but upon the privilege of his beneficiaries to succeed to the property thus dealt with.

By the will of one who died in 1893 the residue of the testator's estate was given to a trustee with provisions for the expenditure of the income until the happening of certain contingencies, when the principal was to be divided among the children of the testator's brother.   By St. 1891, c. 425, the Commonwealth was entitled upon the death of the testator to receive a tax upon the bequests to the children, to be assessed upon their value at that time and to be paid by the executor or trustee within two years from his giving bond.   St. 1902, c. 473, provided among other things that, in cases of devises or bequests, which were liable to a collateral inheritance tax, and which did not take effect in possession until after the expiration of life estates or terms of years, the tax should "not be payable nor interest begin to run thereon until the person or persons entitled thereto" should "come into actual possession of such property, and the tax thereon shall be assessed upon the value of the property at the time when the right of possession accrues to the person entitled thereto as aforesaid, and such person or persons shall pay the tax upon coming into possession of such property.   The executor or administrator of the decedent's estate may settle his account in the Probate Court without being liable for said tax."   The contingencies referred to in the will happened in 1904 and a nephew of the testator received $15,000.   No tax under St. 1891, c. 425, had been paid.   Upon an information in equity against the nephew by the Attorney General at the relation of the Treasurer and Receiver General, it was *held*, that St. 1902, c. 473 was not open to the objection that it impaired vested rights of property, or that it caused unreasonable and unjust discrimination, or that it denied to the respondent the equal protection of the laws, and was not unconstitutional for those reasons; nor was its constitutionality affected by the facts that it applied only to cases in which the tax had remained unpaid, and that, whereas by St. 1891, c. 425, the trustee was required to pay the tax, by St. 1902, c. 473, the defendant was made liable therefor personally.

By the will of one who died in 1893, certain property was given to a trustee to be paid to the testator's nephew at the termination of a life estate.   The final account of an administrator with the will annexed, showing the payment of the trust fund to the trustee, was allowed by the Probate Court in 1896 without the collateral succession and inheritance tax, imposed by St. 1891, c. 425, and required to be paid by the administrator or trustee, being paid, and without any proceedings being taken in accordance with § 18 of that statute to make the Commonwealth a party to the proceedings with regard to the estate.   After the passage of St. 1902, c. 473, making the tax due from and payable by the

beneficiary upon his coming into possession, the estate was distributed by the trustee and his final account was allowed without the tax being paid. *Held,* that the right of the Commonwealth to insist upon the nephew paying the tax was not affected by the allowance of the accounts of the administrator and of the ·trustee, the Commonwealth being in no sense a party to the proceedings in the Probate Court.

A testator died in 1893 and by his will directed that the residue of his estate, after the happening of a contingency, should be given to his nephew. The contingency happened and the nephew received $15,000 in 1904. Although a collateral legacy tax was due to the Commonwealth under the provisions of St. 1891, c. 425; St. 1902, c. 473, none was paid and in 1910 the Attorney General at the relation of the Treasurer and Receiver General brought an information in equity against the nephew to compel the payment of the tax and contended that under St. 1902, c. 473, interest should be paid upon the tax from the date when the nephew received the money, and that that statute was not affected by St. 1909, c. 527, § 10, which made amendments of St. 1907, c. 563, §§ 4, 7, contained in §§ 2, 4, of the 1909 statute, "apply to all cases in which the tax" remained "unpaid at the date of the passage" of the 1909 statute. St. 1907, c. 563, § 4, made such a tax payable at the expiration of one year from the time when the right of possession accrued. *Held,* that the statutes of 1907 and 1909 were intended to deal with the whole subject of taxation of successions, that the language of St. 1909, c. 527, § 10, should receive the general application which its words import, and therefore that interest was not due from the defendant until 1905.

INFORMATION IN EQUITY, filed on February 14, 1911, under the provisions of St. 1909, c. 266, § 1, at the relation of the Treasurer and Receiver General, seeking to compel the payment of a succession and inheritance tax alleged to be due from the defendant under the provisions of St. 1891, c. 425; St. 1902, c. 473.

The case was reserved by *Hammond,* J., for determination by the full court.

The facts are stated in the opinion.

*F. T. Field,* Assistant Attorney General, for the plaintiff.

*S. R. Wrightington,* for the defendant.

SHELDON, J. E. Fenwick Stone died in 1893. By his will he bequeathed the residue of his estate to a trustee, and provided that the income thereof should be expended for the education and support of some of his brother's children, and that in 1904, in the events that have happened, the residue itself should be divided equally among that brother's children. The defendant, being one of those children, received on January 1, 1904, into his actual possession from the trustee property to the amount of $3,750 and on April 12, 1904, to the further amount of $11,358.62. The Attorney General claims that the defendant

is liable for a tax of five per cent on these amounts with interest from the respective dates stated, under the provisions of St. 1902, c. 473. The defendant denies his liability on the grounds, first, that the statute is, as applied to this case, unconstitutional; and secondly, that recovery against him is barred by reason of the fact that the Probate Court has allowed the accounts of the administrator of the testator's estate and of the trustee under the will without having required payment of the succession tax.

The case comes within the terms of the statute. That statute reads as follows: " In all cases where there has been or shall be a devise, descent or bequest to collateral relatives or strangers to the blood, liable to collateral inheritance tax, to take effect in possession or come into actual enjoyment after the expiration of one or more life estates or a term of years, the tax on such property shall not be payable nor interest begin to run thereon until the person or persons entitled thereto shall come into actual possession of such property, and the tax thereon shall be assessed upon the value of the property at the time when the right of possession accrues to the person entitled thereto as aforesaid, and such person or persons shall pay the tax upon coming into possession of such property. The executor or administrator of the decedent's estate may settle his account in the Probate Court without being liable for said tax: provided, that such person or persons may pay the tax at any time prior to their coming into possession, and in such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life estate or estates for years; and provided, further, that the tax on real estate shall remain a lien on the real estate on which the same is chargeable until it is paid." St. 1902, c. 473, § 1. This was not affected by St. 1903, c. 276, for the second section of that act provided that it should not apply to the estate of any person deceased before its passage. But the act of 1902 did apply to such estates; its operation was retrospective as well as prospective. *Stevens* v. *Bradford*, 185 Mass. 439. The bequests for the benefit of the brother's children were liable to a tax under St. 1891, c. 425; and that tax has not been paid. We come therefore to the question of the constitutionality of the act of 1902.

The Commonwealth was entitled upon the death of the testa-

tor to receive a tax upon the bequests to these children, to be assessed upon their value at that time, and to be paid by the executor, administrator or trustee within two years from his giving bond. By the statute now before us, it was to be assessed upon the value of the property at the time when the right of possession accrued to the beneficiary, and was to be paid by him upon coming into possession. In this case, by reason of an increase in the value of the property, this results in a considerable increase of the amount of the tax. Three changes were made by the statute : the time for the payment of the tax was extended for some years, and the date from which interest would run was correspondingly postponed; the tax was assessed upon a valuation made at a later time, whereby it has been increased ; and the liability for its payment was put directly upon the defendant instead of resting upon the administrator.

Certainly the first of these changes was not beyond the power of the Legislature. It was not at all to the detriment, but for the advantage of the taxpayer. It could not in any event increase the charge upon his property; it might materially diminish the amount of interest to be paid, and so lessen the burden put upon him.

The second change seems to have had a double purpose. It was designed to do away with the injustice which under the existing statutes might be done to a tenant for life whose interest was then not taxable, as was pointed out in *Stevens* v. *Bradford*, 185 Mass. 439, 441. It aimed also to do more exact justice both to the Commonwealth and to taxable beneficiaries in remainder, by taxing them upon the real value of what they should receive rather than upon a value fixed by estimation which must be determined sometimes many years before their receipt of the property and which could but rarely accord exactly with the real value of what afterwards should come to them, which might sometimes so far exceed that real value as to subject them to an onerous and disproportionate burden, and in other cases might be materially less than that value, and so afford them a partial exemption, all of which might result in such an unjust discrimination as was condemned in *Succession of Pritchard*, 118 La. 883, 886. The statute substituted a valuation by the same uniform standard, the real value when the property came to the benefi-

ciary, for an uncertain valuation to be made in advance of that time. This was within the language of Parsons, C. J., in *Boston & Maine Railroad* v. *State*, 75 N. H. 513, 517, that in order to tax all property equally it must be valued by the same standard. Certainty was substituted for uncertainty, just as has been done by this court in the assessment of damages for the taking of land by eminent domain, where juries are told to consider what has been actually done after the taking instead of speculating upon what was likely to be done. *Buell* v. *County of Worcester*, 119 Mass. 372. *Woodbury* v. *Beverly*, 153 Mass. 245. *Butchers' Slaughtering & Melting Association* v. *Commonwealth*, 163 Mass. 386, 390. *Manson* v. *Boston*, 163 Mass. 479, 480. *Como* v. *Worcester*, 177 Mass. 543. Such an alteration, designed and adapted to bring about uniformity of taxation by assessing the inheritance of each individual according to its value when he receives it, is not of itself beyond the power of the Legislature in such a case as is now presented.

This is an excise tax, imposed not only upon the right of the owner of property to transmit it after his death, but also upon the privilege of his beneficiaries to succeed to the property thus dealt with. *Minot* v. *Winthrop*, 162 Mass. 113, 124. *Crocker* v. *Shaw*, 174 Mass. 266, 267. The privilege is not fully exercised until the property shall have come into the possession of the beneficiary. This rule underlies the reasoning of *Minot* v. *Treasurer & Receiver General*, 207 Mass. 588. And see the cases there cited. Until the full exercise of such privilege and while as yet no tax has been assessed and paid thereon, we see no reason why, by a general rule applicable to all such cases, any pending liability to taxation may not be regulated so as to subject it to a just and uniform method of assessment, even though some change may thereby be made from the method previously adopted. This involves no infringement or impairment of vested rights; it causes no unjust discrimination by substituting a just and equal assessment based upon actual values for the necessarily uncertain and unequal determination by the opinions of appraisers, however expert, of future and contingent values. It does not deny to the defendant the equal protection of the law; it applies the same rule to him as to all other persons in the same situation, and such cases as

*James* v. *American Surety Co.* 133 Ky. 313, 319, 320, have no bearing. We cannot regard the statute as unconstitutional by reason of this change. ·

Nor is it unconstitutional because it applied only to cases in which a succession tax remained unpaid. This is governed in principle by *Minot* v. *Treasurer & Receiver General,* 207 Mass. 588, in which a statute applying only to powers of appointment " derived from any disposition of property made prior to September first, nineteen hundred and seven," was held to be constitutional.

By the third change, a personal liability for the tax is imposed upon the defendant. But this puts no greater burden upon him. Formerly the tax would have been paid by the administrator, and the defendant would have received so much less. By the new statute, he receives the full amount bequeathed to him, and must himself pay the tax. He is required to pay into the public treasury only the additional amount which by the statute he receives directly from the trustee and indirectly from the administrator. He is not harmed by this. Moreover, he is merely subjected to the payment of an excise tax upon the privilege of receiving property bequeathed to him, and is required to pay it only when he is allowed by our laws to have the actual enjoyment of this·privilege.

We may add that the constitutionality of this statute, though not in terms passed upon, was referred to by the Attorney General in argument and was assumed by the court in *Stevens* v. *Bradford,* 185 Mass. 439. And see to the same general effect *Moffitt* v. *Kelly,* 218 U. S. 400; *Cahen* v. *Brewster,* 203 U. S. 543; *Orr* v. *Gilman,* 183 U. S. 278; *Wright* v. *Blakeslee,* 101 U. S. 174; *In re Howard's Estate,* 80 Vt. 489; *Short's Estate,* 16 Penn. St. 63; *Ferry* v. *Campbell,* 110 Iowa, 290; *Gelsthorpe* v. *Furnell,* 20 Mont. 299; *Succession of Stauffer,* 119 La. 66.

The defendant's liability could not be affected or destroyed by the action of the Probate Court upon the accounts of the administrator or of the trustee.* *Estate of Lander's,* 6 Cal.

---

* The second and final account of the administrator with the will annexed was allowed on April 23, 1896. The first account of the trustee was allowed on February 6, 1902, his second account on March 5, 1903, and his third and final account on May 19, 1904.

App. 744.    That action could not operate collaterally to bar the remedy now sought for.    Neither the second nor the final account of the trustee was allowed until after the statute before us had taken effect.    If the administrator did not comply with the statute in force when he filed his final account, this failure merely left the succession tax upon the residue of the estate unpaid, and so brought it within the operation of the statute of 1902.    The Commonwealth was not a party to any of these accounts, nor was it made so by the publication of notice.    It could not have been made a party without its own consent or in the manner provided by St. 1891, c. 425, § 18, which was then in force.    That statute was not complied with; and the decrees of the Probate Court, whether or not absolutely void, were at least not binding on the Commonwealth.    *Bartlett* v. *Slater,* 182 Mass. 208.    *Montgomery* v. *Gilbertson,* 134 Iowa, 291. *Lacy* v. *State Treasurer,* 121 N. W. Rep. 179.

The New York decisions relied on by the defendant have not commanded assent in this court.    Some of them are referred to in *Minot* v. *Treasurer & Receiver General,* 207 Mass. 588, 593. The California cases cited in his behalf turned upon the language of the Constitution of that State.

We have examined all the decisions referred to by the counsel for the defendant and have considered all the suggestions made for him in argument; but we entertain no doubt of the conclusions which we have reached.

He contends further that his liability accrues, not from the dates when he received the property, but only from one year after those dates.    This is under the provisions of St. 1909, c. 527, §§ 2, 4, which by § 10 are made applicable " to all cases in which the tax remains unpaid at the date" of the passage of that act.    The Attorney General argues that this refers only to the taxes imposed by St. 1907, c. 563, and not to the tax imposed by St. 1902, c. 473.    But this is too narrow a construction of the later act.    It is true that most of its sections are merely amendments of the statute of 1907, and refer only to the taxes imposed by that act.    But the statutes of 1907 and 1909 were designed to deal with the whole subject of the taxation of successions.    In our opinion, the language of § 2 of the St. of 1909, as extended by § 10 of the same act, should receive the general application

which its words naturally import. It follows that the defendant's liability should be taken to accrue and interest must be computed only after the expiration of one year from the times of his acquiring possession of the property bequeathed to him, that is, from January 1 and April 12, respectively, of the year 1905.

The Attorney General is entitled to a decree for the payment by the defendant of the amounts claimed in the information, with interest as above stated.

*So ordered.*