## STATE v. MARY BROOKS.[1]

September 26, 1930.

No. 28,034.

[1]Reported in 232 N. W. 331.

*Essie W. Williams,* for appellant.

*Henry N. Benson,* Attorney General, and *John F. Bonner,* Assistant Attorney General in Charge of Inheritance Tax Matters, for the state.

STONE, J.

Action to recover an inheritance tax wherein the state's complaint was held good on general demurrer; and, the question involved having been certified by the district court as important and doubtful, defendant appeals.

February 17, 1896, Charles Thompson, by the trust deed hereinafter referred to, transferred to trustees what probably was the bulk of his rather large estate. He was then a bachelor but married in the following September. He died, a resident of this state, in 1915. His widow followed him in death June 13, 1929. No inheritance tax has ever been determined or collected on the transfer of the property involved in the trust above referred to. One was collected upon the estate of Charles Thompson not included in that trust. The question whether the transfer of the trust property was subject to the tax was reserved by stipulation for determination by action and is now before us in this one against the estate of Mrs. Thompson.

The instrument creating the trust recited that Charles Thompson was "unequal to the care and management * * * liable to mismanage" the property and income, and "desirous to make provision whereby an ample support will be secured during his lifetime to himself and any family that he may have," and the property preserved "for the benefit of such family after his death." It then transferred the property to the trustees with full power of management and a direction to apply income "or so much thereof as may be necessary, from time to time, to the ample support and main-

tenance of said Charles Thompson and any family that he may have, to invest and accumulate, during the life of the said Charles Thompson, any surplus of income that may arise." The trustees were given an unrestricted power to sell free of the trust, to apply the proceeds "to the support of said Charles Thompson or to the payment of any debt" of his "properly enforceable" against the trust property. A provision of the instrument especially important is this:

"At the death of said Charles Thompson, the trustees shall convey and transfer unto such person as he by his last will * * * shall direct or appoint, all and singular the said trust estate, and in default of such direction or appointment said trustees shall, upon the death of said Charles Thompson, convey all said trust estate and property unto his lawful heirs."

Mr. Thompson died intestate without having made any appointment under the trust deed. There being no children or grandchildren, his wife as only heir took the whole property. It is on that transfer or succession that a tax is now sought under L. 1905, p. 427, c. 288, as amended by L. 1911, p. 516, c. 372 (G. S. 1923 [1 Mason, 1927] §§ 2292-2321). As amended in 1911, the law contains this provision, G. S. 1923 (1 Mason, 1927) § 2292(5):

"Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will; and whenever any person or corporation possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part a transfer taxable under the provisions of this act shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded

thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure."

■ The tax imposed by our statute was characterized in State ex rel. Pettit v. Probate Court, 137 Minn. 238, 239, 163 N. W. 285, L. R. A. 1917F, 436, as one "upon the privilege of succession or inheritance and not upon the estate." See also State ex rel. Hilton v. Probate Court, 143 Minn. 77, 172 N. W. 902. It is always helpful and sometimes important to keep in mind that inheritance taxes may be and are "imposed on either, or both, of two entirely different subjects." One is the mere "transmission of property by a deceased person," and the other "the privilege of taking property by will or by inheritance or by succession in any other form upon the death of the owner." In the latter case it "is imposed upon each legacy or distributive share of the estate as it is received" and "is called a legacy or succession tax." 26 R. C. L. 195.

Our inheritance tax law purports in one part to impose a tax upon "any transfer of property" (G. S. 1923 [1 Mason, 1927] § 2292) but the whole statute makes it plain that a main subject of the tax is the right of succession as well as that of transmission. By § 2294 the value of a gift in trust is made the basis of valuation, and the tax is referred to as one "on any devise, bequest, legacy, gift or transfer." The same characterization appears in §§ 2295 and 2296. By § 2297 the tax is made a lien, not upon the whole estate, but only "upon the property embraced in any inheritance, devise, bequest, legacy or gift until paid"; and by § 2299 executors, administrators and trustees are empowered to sell only "so much of the property embraced in any inheritance, devise, bequest or legacy" as will enable him to pay the tax imposed. So the tax is properly to be characterized as "an excise tax, imposed not only upon the right of the owner of property to transmit it after his death, but also upon the privilege of his beneficiaries to succeed to the property thus dealt with." Attorney General v. Stone, 209 Mass. 186, 190, 95 N. E. 395, 397.

So, whatever else it may be, the duty levied by subd. 5 of § 2292, above quoted, is a succession duty. As to property subject to a

power of appointment, there is considered to take place a taxable succession on the death of the donee and a consequent vesting in the beneficiary of complete title either by reason of the exercise of the power or a failure to exercise it. There being no question as to the meaning of the statute and no doubt that it was the legislative intent to reach just such a succession as that now before us, the only issue is as to the constitutional power of the legislature to do what it has attempted.

The argument contra is that, the Thompson trust having been created in 1896, long before we had any inheritance tax law in this state, the transfer took effect then in such fashion that to impose a tax thereon by a subsequent law would impair the obligation of a contract and result in a deprivation of property without due process of law. The claim is that when Mrs. Thompson married the settlor a few months after the execution of the deed of trust her rights vested thereunder, and thereafter were beyond the reach of any subsequent attempt to levy an inheritance tax.

Counsel say that we took the statute now involved, G. S. 1923 (1 Mason, 1927) § 2292(5), from New York, and it is argued that we are bound in consequence to adopt the view of the court of last resort of that state that it is unconstitutional as applied to successions of the kind presently involved. In re Craig, 97 App. Div. 289, 89 N. Y. S. 971, affirmed in 181 N. Y. 551, 74 N. E. 1116; In re Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 A. S. R. 791; In re Lansing, 182 N. Y. 238, 74 N. E. 882. "It is a well-recognized principle that where a statute, the construction of which has been judicially determined," has been taken from another state, there is a presumption "that the legislature adopted the statute with that settled construction." Nicollet Nat. Bank v. City Bank, 38 Minn. 85, 88, 35 N. W. 577, 579, 8 A. S. R. 643. But that rule does not touch the question of the statute's validity. It is simply impossible to think that the legislature adopted from another state a given statute and with it a decision holding its adoption futile. We must then decide for ourselves the question of constitutionality.

We need not discuss either the distinctions between vested and contingent remainders or those between estates in possession

and expectancy. Neither need we determine just how accurately to characterize the interest in the trust fund acquired by Mrs. Thompson on her marriage to the settlor. There is no uncertainty either as to what she got or what she did not. She did take an irrevocable right to reasonable support while she remained the wife of the settlor and during his lifetime. She did not take any right to succeed to the corpus including accumulated income, if any, on the death of the settlor. As to that Charles Thompson reserved the unconditional power to appoint by will the person or persons who should take, or by not appointing any to transmit the property to his "lawful heirs." So far as the deed of trust is concerned, by an appropriate appointment he could have divested Mrs. Thompson, as of the moment of his death, of all interest in the fund. We find no constitutional obstacle to the legislative declaration that under those circumstances there took place, on the death of Charles Thompson after the passage of the law, a succession which was taxable.

Common law concepts justify the argument that property passing by appointment is derived from the donor of the power rather than from the donee. It has been generally so held. In re Lansing, 182 N. Y. 238, 74 N. E. 882; Minot v. Treasurer, 207 Mass. 588, 93 N. E. 973, 974, 33 L.R.A.(N.S.) 236. But as said in the latter case [207 Mass. 590]:

· "In many particulars the donee is often more directly responsible for the possession and enjoyment of the beneficiary than the donor. * * * In England it is expressly provided by statute that, in the case of a general power, the person executing the power shall be deemed to be the one from whom the estate is received."

The English statutory doctrine so referred to was considered at length in Chanler v. Kelsey, 205 U. S. 466, 27 S. Ct. 550, 51 L. ed. 882. There the deed involved, made in 1844, was in the nature of a marriage settlement by a father in favor of his daughter. It conferred upon her a power of appointment which was exercised by her will, effective when she died in 1902, after the passage of the New York inheritance tax law. The holding was that it was competent for the legislature, notwithstanding the common law rule "that the

estate is taken to come from the donor of the power," to declare that an exercise of the power subsequent to the passage of the law should be treated, at least for purposes of taxation, as creating an estate "coming from the donee, by whose act it was appointed to the beneficiary." [205 U. S. 476.] That conclusion was reached against the same objections now urged, that property would be taken without due process of law and the obligation of a contract impaired. The English view was followed, that the ultimate beneficiary, for the purposes of taxation at least, took not from the donor of the power but from the donee. The same reasoning was followed and a similar result reached in Minot v. Treasurer, 207 Mass. 588, 591, 93 N. E. 973, 974, 33 L.R.A.(N.S.) 236. It was said that, "through the exercise of the power, a right of succession to property may come into existence afterwards, which properly may be a subject for the imposition of a tax." The contrary results reached in In re Lansing, 182 N. Y. 238, 74 N. E. 882; and in In re Chapman, 133 App. Div. 337, 117 N. Y. S. 679, were expressly disapproved. The Massachusetts rule has been followed in Rhode Island (Manning v. Board of Tax Commrs. 46 R. I. 400, 127 A. 865) and Wisconsin (Montague v. State, 163 Wis. 58, 157 N. W. 508). These cases, with Minot v. Treasurer, 207 Mass. 588, 93 N. E. 973, 33 L.R.A.(N.S.) 236, and Burnham v. Treasurer, 212 Mass. 165, 98 N. E. 603, sustain the imposition of a tax upon a succession resulting from a failure to exercise a power of appointment.

Were there doubt otherwise, the matter would be put at rest by Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 227, 72 L. ed. 565 (affirming s. c. 256 Mass. 519, 153 N. E. 4). There trusts had been created by deed previous to the passage of the statute of Massachusetts under which that state attempted to tax the ultimate succession. The settlor, Brooks, in the original deed had reserved the right to change or terminate the trust with the concurrence of one trustee. Later there was an amendment divesting him of all power over the trust except for his right "with one trustee to alter or terminate it." He had done neither. The statute, enacted after the creation of the trust, was similar in terms and purpose

to the one here controlling. The question was whether, subsequent to its passage and notwithstanding that the trust had been created previously, there was a taxable succession. The holding was in the affirmative, the court saying [276 U. S. 271]:

"So long as the privilege of succession has not been fully exercised it may be reached by the tax (citing inter alia, Chanler v. Kelsey, supra). And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices. A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. Bullen v. Wisconsin, 240 U. S. 625, 36 S. Ct. 473, 60 L. ed. 830. The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another. [Brooks had reserved it to himself and any one of his trustees.] And so the property passing to the beneficiaries here was acquired only because of default in the exercise of the power during the donor's life and thus was on his death subject to the state's power to tax as an inheritance."

Mr. Justice Sutherland gets the whole proposition into one short statement in Tyler v. U. S. 281 U. S. 497, 502, 50 S. Ct. 356, 358, 74 L. ed. 991. He said: ·

"Death duties rest upon the principle that death is the 'generating source' from which the authority to impose such taxes takes its being, and 'it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties.' Knowlton v. Moore, 178 U. S. 41, 56, 57, 20 S. Ct. 747, 754, 44 L. ed. 969. But mere names and definitions, however important as aids to understanding, do not conclude the lawmaker, who is free to ignore them and adopt his own. Karnuth v. United States, 279 U. S. 231, 242, 49 S. Ct. 274, 73 L. ed. 677. A tax laid upon the happening of an event, as distinguished from its tangible

fruits, is an indirect tax which Congress, in respect of some events not necessary now to be described more definitely, undoubtedly may impose. If the event is death and the result which is made the occasion of the tax is the bringing into being or the enlargement of property rights, and Congress chooses to treat the tax imposed upon that result as a death duty, even though, strictly, in the absence of an expression of the legislative will, it might not thus be denominated, there is nothing in the Constitution which stands in the way." See also Moffitt v. Kelly, 218 U. S. 400, 31 S. Ct. 79, 54 L. ed. 1086, 30 L.R.A.(N.S.) 1179.

The constitutional inhibitions invoked, while found in the state constitution, are also in that of the nation, and the question is determined for us by the decisions of the Supreme Court of the United States. The determinative moment is the one when there takes place the final shifting of the "economic benefits and burdens" of the property. [276 U. S. 271.] There takes place then a taxable succession. The nonexercise of a power may be as much a disposition of property testamentary in nature as its exercise. Chase Nat. Bank v. U. S. 278 U. S. 327, 49 S. Ct. 126, 73 L. ed. 405, 63 A. L. R. 388. A transfer subject to the power of revocation in the transferrer, terminable at his death, is not complete until his death. Reinecke v. Northern Tr. Co. 278 U. S. 339, 49 S. Ct. 123, 73 L. ed. 410. A power to appoint to others than the beneficiary has the same effect as a power of revocation. Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. ed. 565. The exercise of such a power would be as effectual in divesting the interest of the beneficiary as a revocation. Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. ed. 1184, 52 A. L. R. 1081, is not in point for the simple reason that the transfer there involved was absolute. There was no reserved power either of revocation or appointment. Completely distinguishable on the same ground are State ex rel. Tozer v. Probate Court, 102 Minn. 268, 112 N. W. 888; and In re Estate of Marshall, 179 Minn. 233, 228 N. W. 920.

It follows that the order appealed from must be affirmed.

So ordered.