341 S.W.2d 866 (1960)
In re ESTATE of Mary W. TOMPKINS, Deceased.
Mary T. HALL, Executrix, Estate of Mary W. Tompkins, Deceased, Appellant,
v.
Milton CARPENTER, Director of Revenue, State of Missouri, Respondent.
No. 47526.
Supreme Court of Missouri, Division No. 1.
December 12, 1960.
Motion to Transfer Denied January 9, 1961.
*868 C. P. Fordyce, St. Louis, for appellant.
John M. Dalton, Atty. Gen., Robert R. Welborn, Asst. Atty. Gen., for respondent.
Motion to Transfer to Court en Banc Denied January 9, 1961.
DALTON, Judge.
This is an appeal from the judgment of the circuit court, affirming an order of the probate court overruling the exceptions of Executrix Mary T. Hall to the report of a Missouri Inheritance Tax Appraiser theretofore filed in the Estate of Mary W. Tompkins, deceased. We have jurisdiction of the appeal for the reason, among others, that the amount in dispute, exclusive of costs, exceeds $60,000.
The cause comes to the writer on reassignment. After an opinion was prepared and adopted a motion for rehearing was sustained and the cause was redocketed and reargued. Appellant's motion for rehearing and her brief on rehearing do not question the statement of facts set out in the opinion and, since we find it correct and sufficient, we adopt it and certain other portions of the opinion with slight modification.
Mary V. K. de Giverville died in 1913. Her will created a trust which was to continue until the death of the last survivor of five named relatives including Mary W. Tompkins, Mrs. de Giverville's niece. During the existence of the trust and during Mrs. Tompkins' life, the trustee was to pay to her a stated portion of the net income. If Mrs. Tompkins died before the end of the trust, her share of the net income and the same fractional part of the principal (at the termination of the trust) were to be paid to her surviving issue, subject, however, to the provision that Mrs. Tompkins had the unlimited power to appoint by her will the persons to receive such net income and principal which otherwise would go to her surviving issue. On December 16, 1942, Mrs. Tompkins, in a writing directed to the successor trustee, released her right to appoint anyone other than her own descendants and their respective spouses.
Mrs. Tompkins died testate on October 29, 1951, but was not the last survivor of the five named relatives and, consequently, the trust continued. She was survived by her daughter-in-law, Mary T. Tompkins, the widow of her only son Louis. Mary and Louis had two children. Mary subsequently remarried and at trial time was Mary T. Hall, the executrix of the will of Mrs. Tompkins and the present appellant. Thus appellant's two children were Mrs. Tompkins' surviving issue who would have been takers under the de Giverville will in default of appointment. Mrs. Tompkins exercised the power of appointment and by her will gave one half of her 17/27ths share of the income to her daughter-in-law, Mary, and one fourth each to her grandchildren, and directed that upon the termination of the trust 17/27ths of the principal was to be distributed one half to her daughter-in-law, Mary, if living, and the balance thereof or all if Mary should die prior to the end of the trust to her descendants.
*869 By her will Mrs. Tompkins directed her executrix to pay, out of residue of the property which she owned in her own name at her death, all inheritance taxes due in respect of the bequests and devises made in her will, including all "succession taxes for the payment of which my executor, or any legatee, devisee, or appointee, is liable."
The inheritance tax appraiser in the Tompkins estate determined that the value of 17/27ths of the principal of the de Giverville trust was $725,468.71 and used that figure in fixing the tax due from appellant and her children, respectively. The total of their assessment was $62,652.36.
In 1913 there had been assessed against the executor of the de Giverville estate an inheritance tax in the amount of $43,628.89, representing five per cent of the gross market value of that estate, and the tax had been paid. With reference to this assessment the appellant contends the appraisal included all of Mrs. de Giverville's property, while respondent says the assumption that the tax assessed was on the entire estate is not justified in view of Sections 314-323 RSMo 1909. We think it is unnecessary to determine this question in order to determine the issues here presented. For our purposes we shall assume that the payment of inheritance taxes in 1913 by the executor of Mrs. de Giverville's estate included inheritance tax on the same property as the instant appointed property. This appeal, as we shall see, turns upon the construction of Section 145.030 RSMo 1949, V.A.M.S., which we shall subsequently set out haec verba.
Appellant's Brief on Rehearing, under the heading of Points and Authorities, contains headings as follows: IPowers of Appointment at Common Law. II Historical Development of Inheritance Taxation of Right to Receive Appointive Property. IllThe Missouri Power of Appointment Statute. The headings under Division III are as follows: (A) Statutory Provisions; (B) Differences between Provisions of Missouri Statute and Comparable New York and Illinois Statutes; (C) Effect of Statutory Changes Made by Missouri; (D) Respondent's Construction of Our Statute is Erroneous; (E) The Construction Adopted by This Court in Its First Opinion is Erroneous; (F) Our Statute Does Not Require Those Who Receive Appointive Property at Death to Pay Two Inheritance Taxes for the Privilege of Doing So.
This brief does not comply with Supreme Court Rule 83.05(a) (3) and (e), V.A.M.R. as to what the appellant's brief shall contain under Points and Authorities, nor does appellant's original brief fully comply with Supreme Court Rule 1.08 in effect prior to April 1, 1960. The original brief under "Points and Authorities" states: "A. The State has the burden of showing that the tax is due. B. Section 145.030 RSMo 1949, relied on by the State, does not levy the tax claimed to be due." The subheads, under B, are as follows: "1. The clear words of said Section show that the tax here involved was assessed to the wrong estate and in an erroneous manner. 2. The General Assembly of Missouri did not intend Section 145.030 to require appointees to pay double inheritance taxes upon the privilege or receiving property appointed to them by the donee of a power of appointment. Authorities are cited under the several headings.
Waiving any defects in the form of the briefs filed, we have given them full consideration and find that appellant contends the trial court erred in affirming the order of the probate court overruling her exceptions to the report of the Missouri Inheritance Tax Appraiser because "Section 145.030 RSMo 1949 does not authorize the imposition of the tax assessed against the appellant and * * * the imposition of the tax in the present case will result in illegal, double taxation." In the statement portion of Appellant's Brief on Rehearing, we find the following: "The appellant contends that the tax assessed in respect of the appointive property is not justified by Section 145.030, because said statute expressly provides that appointive property shall be *870 taxed `in the same manner as though (it) had been bequeathed or devised by the donor (Mrs. de Giverville) by will.' The appellant further contends that the State has the burden of pointing to a clear statute levying the tax claimed to be due, and that the State has failed to carry this burden."
Does Section 145.030 RSMo 1949, V.A. M.S. authorize the imposition of the mentioned tax? Section 145.030 provides: "Whenever any person or corporation shall exercise the power of appointment derived from any disposition of property made either before or after the passage of this law, such appointment when made shall be deemed a transfer taxable under the provisions of this law in the same manner as though the property to which said appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by the donor by will; and whenever any person or corporation possessing such power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a transfer taxable under the provisions of this law shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power relates had succeeded thereto by a will of the donee of the power failing to exercise such power taking effect at the time of such omission or failure. The tax so imposed shall be determined by the clear market value of such property at the rate herein prescribed and only upon the excess over the exemptions herein made." (Our italics.)
Appellant argues that the foregoing statute is unambiguous and that a reasonable construction of the language clearly demonstrates that the instant tax was "assessed to the wrong estate and in an erroneous manner." In support she points to the first italicized language in the above-quoted section and particularly to the phrase "and had been bequeathed or devised by the
donor by will." She argues that inasmuch as Mrs. de Giverville was the donor, the instant appointive property has not been, as the statute requires, taxed as though it had been bequeathed or devised by Mrs. de Giverville by will, but, on the contrary, has been taxed as though it was bequeathed or devised by Mrs. Tompkins (the donee) by will. Appellant's position in that respect is amplified by her statement in one of the exceptions to the appraiser's report: "* * * it is impossible for a transfer of property to be taxed in the same manner as though it belonged absolutely to one person and had been bequeathed or devised by the will of another and different person." Appellant also says "Section 145.030 does not justify the imposition of such a tax in the donee's estate, for such property passes under the will of the donor of the power, and is taxable only in the estate of such donor." (Italics ours.) Appellant further argues that, if the statute is ambiguous and needs construction to determine the legislature's intent, then, under many rules and for various assigned reasons, it is clear that the legislature did not intend to require appointees to pay "double inheritance taxes upon the privilege of receiving property appointed to them by the donee of a power of appointment."
We think the statute ambiguous. To whom does the word "donor" refer? This word appears in the phrase reading "and had been bequeathed or devised by the donor by will." (Italics ours.) Appellant construes the word to mean the donor of the power of appointment, that is, the original donor of the appointive property, but the word "donor" is not defined in the statute as the donor of the power of appointment. Appellant seeks to read that meaning into the statute. We think that to so construe the word "donor" would result in a clear conflict between the last part of the "as though" clause and the preceding portion of the mentioned statute. Since the meaning of the word "donor" as used in the statute is not clearly stated and its meaning is subject to question, as to whether *871 the words donee and donor refer to different parties or to the same party in different capacities, the statute is ambiguous and is subject to construction under applicable rules of law. We think that, under applicable rules of statutory construction, the word "donor" as here used in the statute can only refer to the donor of the appointive property under the power of appointment; and that both parts of the "as though" clause were intended to be illustrative of and consistent with the preceding part of the statute.
Section 145.030 was originally enacted in 1917 and was Section 2 of Committee Substitute for House Bill 638, Laws 1917, p. 114, entitled: "AN ACT providing for a tax on the transfer of gifts, legacies, inheritances, bequests, devises, appointments and successions; providing for its payment and collection, establishing and enforcing liens therefor; * * *" (italics ours). Section 2 is entitled: "What deemed a transfertax to be determined by clear market value." (Italics ours).
"Since the title of an act is essentially a part of the act and is itself a legislative expression of the general scope of the bill, it may be looked to as an aid in arriving at the intent of the legislature." Hurley v. Eidson, Mo.Sup., 258 S.W.2d 607, 610(2); Holder v. Elms Hotel Co., 338 Mo. 857, 92 S.W.2d 620, 622(2), 104 A.L.R. 339. The title evidences an intention to impose a tax on the transfer of legacies, appointments and successions. Reading the section down to the last of the "as though" phrases of the first portion of the statute which we have italicized, we find it clear, definite, certain and unambiguous in its meaning. It provides: "Whenever any person * * shall exercise the power of appointment derived from any disposition of property * * * such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property to which said appointment relates belonged absolutely to the donee of such power * * *." The words "as though" are used to separate the first portion of the statute from the next two phrases, which as stated are intended as illustrative, and make reference "as though" something were true which isn't. In Webster's New International Dictionary, Second Edition, Unabridged, the word "As" is defined as: "If.as if or as though. As might be, supposing or in case (that); as anyone or anything would do if; as running as if (or as though) pursued by fiends; often implying that the supposition is unlikely to be realized * * *." The words, "as if" or "as though" are not used when referring to a matter that has happened, is known, is true or is realized. The first part of the section clearly states that the exercise of the power of appointment shall be deemed a transfer subject to the tax imposed. The two phrases of the clause following the words "as though" cannot be used to defeat the clear meaning of the statute considered as a whole. St. Louis Southwestern Ry. Co. v. Loeb, Mo.Sup., 318 S.W.2d 246, 252. It is "elementary that the primary rule to be applied in the construction of statutes is to ascertain and give effect to the legislative intent." Taney County v. Empire District Electric Co., Mo.Sup., 309 S.W.2d 610, 614(3); St. Louis Southwestern Ry. Co. v. State Tax Comm., Mo.Sup., 319 S.W.2d 559, 562[2, 3].
In further consideration of the phrase relied on by appellant, to wit, "and had been bequeathed or devised by the donor by will," (Italics ours), we agree that the terms used in a statute must be given their usual and ordinary meaning, unless such construction will defeat the manifest intention of the statutory provision. O'Malley v. Continental Life Ins. Co., 335 Mo. 1115, 75 S.W.2d 837; State ex rel. Spink v. Kemp, 365 Mo. 368, 283 S.W.2d 502, 527 (39); Tiger v. State Tax Commission, Mo. Sup., 277 S.W.2d 561, 564. We have also considered all other applicable rules for statutory construction as cited and relied upon by appellant. Appellant insists that the part of the statute reading "taxable * * * in the same manner as though the *872 property to which said appointment relates belonged absolutely to the donee of such power" may be construed separately and apart from the next part of the sentence; and that, when this part is read as written, it is not meaningless, but can be intelligently enforced without reference to the words "and had been bequeathed or devised by the donor by will", which are equally important and not inconsistent, but appellant says that the only way an inconsistency between this phrase and the preceding one can be avoided is by construing the last phrase of the "as though" clause as describing, in part, the manner of computing the tax provided for in the section, that is by construing the word "donor" to mean the original donor of the appointive property and the donor of the power of appointment (Mrs. de Giverville). We think the second part of the "as though" clause is made inconsistent with the first part of the clause by appellant's construction of the word "donor."
Appellant further argues that the legislature "by writing into Section 145.030 the common law principle that appointive property shall be treated as though it passed under the will of the donor of the power, our legislature indicated no intent to change such principle; but, on the other hand, showed its desire to leave such common law principle in effect despite the change made by the preceding clause * * * therefore, that the statute here involved must not be construed as altering the common law further than its words import." (Italics ours.) Appellant further argues "that appointees do not take from the donee of a power of appointment, but take from the donor; and take as if their names had been inserted in the instrument creating the power when such instrument first came into existence." While we recognize the well-established common-law rule, nevertheless we think the legislature by enacting the mentioned section intended to tax the exercise of the power of appointment "as though" it were a transfer of the property. "It is competent for the Legislature to declare for the purpose of succession taxes, that the person executing the power shall be considered the source of the estate which is received by reason of the exercise of the power." In re Estate of Robinson, 192 Minn. 39, 42, 255 N.W. 486, 487; State v. Brooks, 181 Minn. 262, 232 N.W. 331. It is clear, we believe, that to construe the word "donor", as here used, to mean the donor of the power of appointment, as contended by appellant, would defeat the clear intent and purpose of the legislature, as evidenced by the Act considered as a whole. "The entire legislative act must be considered together and all provisions must be harmonized, if reasonably possible, and every word, clause, sentence, and section of an act must be given some meaning unless it is in conflict with the legislative intent." McCord et al. v. Missouri Crooked River Backwater Levee Dist. of Ray County, Missouri, Mo.Sup., 295 S. W.2d 42, 45[2, 5]; State ex rel. McKitrrick v. Carolene Products Co., 346 Mo. 1049, 144 S.W.2d 153, 155[2].
"When called upon to construe a statute, the court's prime duty is to give effect to the legislative intent as expressed in the statute. To this end we are guided by certain well established and recognized rules, among which are the following: (a) The object sought to be obtained and the evil sought to be remedied by the Legislature; (b) the legislative purpose should be assumed to be a reasonable one; (c) laws are presumed to have been passed with a view to the welfare of the community; (d) it was intended to pass an effective law, not an ineffective or insufficient one; (e) it was intended to make some change in the existing law." State ex rel. M. J. Gorzik Corp. v. Mosman, Mo.App., 305 S.W.2d 733, 734; State ex rel. M. J. Gorzik Corp. v. Mosman, Mo.Sup., 315 S.W.2d 209, 211. To adopt appellant's view would obviously result in the statute being meaningless and would, we believe, tend to convict the legislature of having enacted "an absurd law incapable of being intelligently enforced." Bingham v. Birmingham, 103 Mo. 345, 352, 15 S.W. 533, 535. This court should not construe a legislative enactment in such a manner as to *873 render it wholly meaningless unless no other construction is open to the court.
In order to be consistent with the section considered as a whole, give effect to the legislative intent as clearly expressed and to make some change in the existing law, we must and do construe the word "donor", as used in the last "as though" phrase, to mean the donor of the appointive property under the power of appointment, that is, we construe the words "the donee of such power" and the words "the donor" to refer to the same individual, but in his different capacities. To be consistent and meaningful, the word "donor" must be so construed as to effect the clear purpose of the statute. In effect the statute provides that the party exercising the power of appointment under a power theretofore granted is to be considered for the purposes of the act as though he were the absolute owner of the appointive property and a donor making a devise or bequest by will. Unless we so construe the word "donor" the purposes of the statute will be defeated. In reaching our conclusion we have also considered the latter portion of Section 145.030 including the italicized words, "had succeeded thereto by a will of the donee of the power failing to exercise such power."
It is true, as appellant points out, that our statute, Section 145.030, when enacted (Laws Mo.1917, p. 115, Sec. 2) was to all intents and purposes identical with the provisions contained in Section 220(5) of the New York law of 1897 (Vol. 1, Laws N. Y. 1897, Ch. 284, Sec. 220(5), p. 150), with the single exception that the New York law said "in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed and devised by such donee by will * * *," while, as noted, the Missouri law said, "and had been bequeathed and devised by the donor by will." In our view the meaning of each statute is the same whether the word "donee" or "donor" is last used. When the words "by such donee by will" are used, as in the New York statute, the reference is to the bequest or devise by the donee to the appointees; but when the words, "by the donor by will" are used, as in the Missouri statute, the reference to "donor" must, for the reasons hereinbefore stated, be construed as being intended to mean the donor of the appointive property under the power of appointment. (Italics ours.)
It is clear to us that Section 145.030 insofar as here pertinent, means that the transfer of the appointed property accomplished by the will of Mrs. Tompkins, is deemed, for inheritance tax purposes, to have been a transfer by Mrs. Tompkins of her absolute property to the appointees.
In reaching this conclusion we have not overlooked appellant's argument that either the donor of the power of appointment or the donee of such power must be the statutory "decedent" mentioned in our inheritance tax act, Section 145.010 et seq. RSMo 1949, V.A.M.S.; and that the legislature intended the donor of the power of appointment as the donor of the appointive property to be the only statutory "decedent", as mentioned in the inheritance tax act. We do not agree. Both may be a decedent under the act. In any event, Section 145.030 expressly provides for taxation "under the provisions of this law" and it is evident that the donee of a power of appointment (Mrs. Tompkins) upon exercising the power as to the appointive property became for the purposes of said act the "decedent" referred to in the act for the purposes of taxation in her estate. The tax, if otherwise valid, was properly assessed in the estate of the one exercising the power, in this case in the estate of appellant's decedent.
Appellant's contention that to require Mary T. Hall and her children to pay the instant inheritance tax constitutes illegal or discriminatory double taxation is based upon the premise or propositon that Mrs. Hall and her children, the donee's appointees, are required as "contingent remaindermen, who take appointive property, to pay two inheritance taxes for the privilege of receiving their bounty, *874 while requiring all other contingent remaindermen to pay only once, * * *." And, says appellant, no "sound reason exists for discrimination between them. No sound reason exists for treating and taxing appointees as if they received one legacy from the donor of the power of appointment, and an additional and distinct legacy from the donee, while in law and in fact the donee gives the appointees nothing which they have not already received from the donor." Appellant further says that "our inheritance tax is a tax on the privilege of the living of receiving property from the dead" and, therefore, "acts done to effectuate the transfer, such as exercising a power of appointment either by will or by a simple instrument inter vivos, do not constitute a taxable event", because the statute in question, Section 145.030, "contains no statement to the effect that the tax imposed thereby is to be levied in addition to the tax described in Section 145.020." Appellant further argues that "in 1913 the executor of Mrs. de Giverville's will paid inheritance taxes upon all life estates and remainder interests created by said will. The payment made was charged to the estate and this reduced the property held in trust for the ultimate benefit of all remaindermen. The State thus collected one tax for the privilege granted to the remaindermen of receiving their respective interests in the trust property. Now the State asks for a second tax from certain remaindermen for the privilege of receiving Mrs. Tompkins' share of the de Giverville trust." Appellant repeatedly argues that inheritance taxes must be levied and "paid out of the property transferred, unless the recipients decide to use other funds to discharge such liability." We have seen that the will of Mrs. Tompkins made provision for the payment of such taxes. Appellant cites and relies upon Wood v. Deuser, 349 Mo. 1187, 164 S.W.2d 303, where this court found a legislative intent to ignore the corporate entity of corporations under an income tax statute. The case does not aid us here.
As to the contention that the statute as construed imposes illegal double taxation, we adopt and approve a portion of an opinion written by Commissioner Coil, as follows: "We think appellant's basic premise that appointees paid or are liable for an inheritance tax as contingent remaindermen both under Mrs. de Giverville's will and as to the same legacy under Mrs. Tompkins' will is fallacious. It appears that Mary Hall never was a contingent remainderman under Mrs. de Giverville's will and that while Mary Hall's children were contingent remaindermen or were to receive remainders subject to conditions precedent (Rest., Property Vol. 2, Sec. 157, p. 541, note p. 542) under Mrs. de Giverville's will, they actually take as the appointees of Mrs. Tompkins and not as contingent remaindermen.
"The presently relevant provisions of Mrs. de Giverville's will were:
"`The share of said net income herein provided for any one of the four above mentioned persons who shall, either before the time of my death or afterwards during the life of this trust, die leaving issue then surviving, shall in such event go to such issue; provided, that if my said niece Mary shall have left a last will and testament the Trustee shall dispose of, in the manner therein appointed or in the absence of express disposition thereof, in the manner in which her residuary estate may be disposed of thereunder, the net income which she at the time of her death or mine, whichever may last occur, may be entitled to enjoy; and at the expiration of this trust, shall dispose of, in like manner according to the provisions of her last will, a share of the principal or corpus of said trust estate equal to her said portion of said income. * * * and at the death of the survivor of said five persons, the corpus of said trust estate shall, subject to the right of disposition by last will hereinabove given to my said niece Mary, be distributed amongst those persons who at the death of such survivor shall be enjoying a distributive interest in said net income * * *.'
*875 "Thus it will be seen that remainders were created and the issue of the relatives Mrs. de Giverville named in her will who survived their respective named relative were contingent remaindermen.
"Mary Hall, Mrs. Tompkins' daughter-in-law, was not the surviving issue of Mrs. Tompkins and consequently was not a contingent remainderman in any event. It is clear that Mary Hall, against whom the largest part of the total tax claimed has been assessed, takes as the appointee of Mrs. Tompkins and that had Mrs. Tompkins not exercised the power of appointment Mary Hall would have taken nothing under Mrs. de Giverville's will. It follows, of course, that appellant's premise that she had paid or is liable for an inheritance tax as a contingent remainderman both under Mrs. de Giverville's will and as to the same legacy under Mrs. Tompkins' will is erroneous.
"The remainders to the surviving issue (the grandchildren) of Mary Tompkins were subject to a further condition precedent, viz., that Mary Tompkins not exercise the power of appointment but die intestate. That condition precedent was not satisfied because Mary Tompkins exercised the power of appointment. It seems apparent, then, that Mrs. Tompkins' grandchildren do not take as remaindermen under Mrs. de Giverville's will; they could not because their remainders were defeated by the exercise of the power of appointment by Mary Tompkins. Glidewell v. Glidewell, 360 Mo. 713, 230 S.W.2d 752, 757(9); St. Louis Union Trust Co. v. Clarke, 352 Mo. 518, 178 S.W.2d 359, 365(10). They take as the appointees of Mary Tompkins.
"While, as heretofore noted, Mary Tompkins by a writing addressed to the successor trustee in December 1942, voluntarily changed her unlimited power of appointment to a limited one for the avowed purpose of lessening federal estate taxes payable at her death, we think it is clear that such action did not alter the fact that her grandchildren take as the appointees of Mary Tompkins. It seems appropriate then to illustrate by supposing that Mary Tompkins had not voluntarily limited her power of appointment and that under her general and unlimited power she had appointed persons other than her daughter-in-law and her grandchildren, other persons who were not contingent remaindermen under the will of Mrs. de Giverville; or suppose she had named as sole appointee, her daughter-in-law, Mary Hall. Certainly, it would not be seriously contended that such person or persons who would have taken as the appointee or appointees of Mary Tompkins would, because of the instant tax, have paid twice for the same privilege, i.e., the privilege of receiving the same property in the same capacity. The happenstance that the same persons (the grandchildren) who were contingent remaindermen under the will of Mrs. de Giverville became, after their remainders were cut off, Mrs. Tompkins' appointees, does not justify the conclusion that paying a tax for the privilege of receiving property as a contingent remainderman is the same thing as paying a tax for the privilege of receiving the same property in a different capacity, as an appointee.
"Illegal or discriminatory double taxation occurs when one `subject of taxation contributes twice to the same burden while other subjects of the same class are required to contribute but once.' State v. Hallenberg-Wagner Motor Co., 341 Mo. 771, 108 S.W.2d 398, 402(6-8). It is not our present province to determine whether the provisions of Section 145.030 may not in some instances work inequities. We need only determine, as we have, that the requirement that the instant taxes be paid does not amount to discriminatory or illegal double taxation in violation of any constitutional provision."
It follows that the judgment should be and it is affirmed.
All concur.