DONALD L. MANFORD, Special Judge.
This is a proceeding in probate wherein the surviving spouse elected to take against the will of decedent. The circuit court, probate division, entered judgment in the form of its order determining the method for the calculation of the share of the surviving spouse. This appeal followed. The judgment is reversed and the cause remanded.
Appellant presents a sole point, which in summary charges that the trial court erred in its interpretation of § 474.163.3, RSMo 1978, thus requiring that domestic services provided by decedent be considered as a fifty percent contribution of moneys’ worth toward the acquisition, establishment, or creation of jointly held property.
This case, having been tried to the court, places the review of same within Rule 73.-01 and the interpretation of that rule provided by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976).
Upon trial, the only evidence introduced was by appellant, Harry Leve, the surviving spouse of decedent, Thelma Leve. This evidence is summarized as follows:
Harry Leve (appellant) was the husband of Thelma B. Leve (decedent) from November 29, 1945 until decedent’s death on January 27, 1983. During the marriage, appellant was gainfully employed outside the home until his retirement sometime around 1970. Thereafter, appellant drew social security. The income and earnings so derived were placed in accounts and investments jointly held by appellant and decedent. The moneys from said accounts and investments were used to support appellant and decedent. Decedent was never employed outside the home. Upon the death of her mother in 1968, decedent received an interest in' some real estate and some money. Decedent kept this money, and moneys received as rent from the real estate, in a separate account in her name alone. Decedent also received social security which she deposited in her and appellant’s joint account. In 1948, appellant and decedent purchased a home for $10,250.00, which *265 was titled in appellant and decedent by the entireties. The monthly payments for the house were made from the joint account. The house was paid off in 1959.
Decedent died, leaving no children or parents but was survived by a brother Elmer Bernhardt as well as by appellant. Upon her death, decedent willed her entire estate, minus the expenses as paid above, to her personal representative in trust for the benefit of her brother, Elmer Bernhardt, for as long as he lives and upon his death, the balance of said trust to be divided and distributed to her brother’s wife and named charitable institutions. On March 28, 1983, appellant timely filed his election to take against the will. Since decedent’s death, appellant has sold their home for $34,-558.00. Appellant testified that he actually received $30,349.86 for the home.
While the value of decedent’s estate, the statutory exemptions, and the claimed joint property values are provided to this court, in light of the disposition of this appeal, those figures bear no real significance and are thus excluded herein.
This case poses an interesting and difficult question in that it requires an interpretation of § 474.163.3, which was enacted in 1980 and for which there are no prior cases of interpretation.
Pursuant to § 474.160, RSMo 1978 and 474.163, RSMo Supp.1984, since decedent left no lineal descendants, on electing to take against her will, appellant became entitled to receive one-half of decedent’s estate offset by his homestead allowance of $7,500.00 and subject to claims.
Section 474.163 prescribes the method for determining the value of the estate for purposes of taking against the will and states in part:
1.For the purposes of section 474.160, the estate consists of all money and property owned by the decedent at his death, reduced by funeral and administration expenses, exempt property, family allowance and enforceable claims, and increased by the aggregate value of all money and property derived by the surviving spouse from the decedent by any means other than testate or intestate succession, exempt property or family allowance without a full consideration in money or money’s worth. The aggregate value of money and property so derived by the surviving spouse from the decedent shall be offset against the elective share given by section 474.160.
2. Property derived from the decedent includes, but is not limited to:
(1) Any beneficial interest of the surviving spouse in a trust created by the decedent during his lifetime;
(2) Any property appointed to the spouse by the decedent’s exercise of a general or special power of appointment also exercisable in favor of persons other than the spouse;
(3) Any proceeds of insurance, including accidental death benefits, on the life of the decedent attributable to premiums paid by him;
(4) Any lump sum immediately payable, and the commuted value of the proceeds of annuity contracts under which the decedent was the primary annuitant, attributable to premiums paid by him;
(5) The commuted value of amounts payable after the decedent’s death under any public or private pension, disability compensation, death benefit or retirement plan, exclusive of the Federal Social Security system, by reason of service performed or disabilities incurred by the decedent; and
(6) The value of the share of the surviving spouse resulting from rights in community property in any other state formerly owned with the decedent.
Premiums paid by the decedent’s employer, his partner, a partnership of which he was a member, or his creditors, are deemed to have been paid by the decedent.
3. When immediately before the decedent’s death the surviving spouse was a cotenant or remainderman with respect to money, property, a trust fund or an account in a bank of other financial institution and, incident to such death, the *266 surviving spouse became the sole owner thereof or the owner of a life interest therein, the whole value of such sole ownership or life interest shall be deemed to have been received from the decedent, except as to the proportion of such value, if any, derived from contributions toward the acquisition, establishment or creation or[1] the money, property, fund or account made by the surviving spouse or ascendant or collateral blood relatives of the surviving spouse, other than the decedent.
[[Image here]]
The record shows that appellant received no property pursuant to sub-section 2.
The issue herein is whether jointly held property, which succeeded to appellant upon decedent’s death, in light of appellant’s election to take against the will, is to be deemed, in whole or in part, as having been derived from decedent within the meaning of § 474.163.3, so as to be included, in whole or in part, within the decedent’s estate.
Appellant contends that none of the jointly held property should be included in the estate because decedent contributed nothing to the acquisition, establishment or creation of the money, property, fund or account and all monies held jointly, and all monies used to acquire joint property, were derived from appellant’s earnings and income. The respondent, the personal representative of decedent’s estate, contends that one-half of the joint property should be included in the estate because decedent’s services as wife and homemaker constituted 50% of the contribution to the acquisition, establishment or creation of the money, property, fund or accounts held jointly.
Determination of this issue requires an examination and interpretation of § 474.-163. The probate court, in a well-written opinion, examined the legislative intent behind § 474.163. This opinion relies in part upon that opinion.
Section 474.163 is patterned after § 2-202 of the Uniform Probate Code (UPC) but contains a number of differences. Specifically, § 474.163 contains a special provision for treatment of property held jointly by decedent and spouse, (i.e., subsection 3) which is not contained in UPC § 2-202. It is not clear why the drafters of § 474.163 chose to adópt a special provision for joint property held by a decedent and spouse. Therefore, a close comparison of subsections 1 and 3 of § 474.163 is necessary in order to determine the legislative intent.
The terminology used in subsection 3 differs from that used in subsection 1. Specifically, subsection 3 provides that property held jointly by a decedent and spouse which becomes the property of the spouse upon decedent’s death shall be deemed to be property received from the decedent except to the proportion of the value derived from contributions by the spouse or collateral or ascendant blood relatives of the spouse. This subsection speaks of received property while subsection 1 speaks of derived property.
The probate court concluded, and this court agrees, that considering the general scheme of § 474.163 and that it was patterned after UPC § 2-202, it is reasonable to conclude that received property is intended to be included within the term derived property as used in subsection 1 and therefore received property is to be included in the estate for purposes of determining the elective share to be taken against the will.
However, both subsections 1 and 3 state conditions by which a certain amount of the received (or derived) property to be included in the estate is to be excepted. Specifically, subsection 1 provides that the estate is to be increased by the amount of property derived by the surviving spouse from the decedent without a full consideration in money or money’s worth. Compare subsection 3 which provides that certain property which passed to spouse upon dece *267 dent's death is to be deemed received (and therefore derived as we reasoned earlier) from decedent, except as to the proportion of such value, if any, derived from contributions toward the acquisition, establishment or creation of the property made by the surviving spouse.
There is no explanation for the differing conditions of exceptions in subsections 1 and 3 (i.e., full consideration in money or money’s worth versus contribution toward acquisition, establishment or creation).
Once again, the probate court reasoned that there must be some parallel meaning between the two subsections in view of the fact that the entire section was patterned after UPC § 2-202. The probate court correctly cited the well-established rule that in construing statutes, courts should try to harmonize the various parts as well as try to harmonize the construed statute with other statutes. In re Tompkins’ Estate, 341 S.W.2d 866 (Mo.App.1960). Therefore, the probate court concluded, as does this court, a contribution contemplated by subsection 3 is construed to mean a contribution in money or money’s worth.
Now, if it can be said the issue is narrowed, the matter can be stated thusly: Did decedent make any contribution in money or money’s worth to the acquisition of the jointly held property?
Again, the probate court concluded that decedent made no contribution in money toward the acquisition, establishment or creation of the joint property. This court disagrees. It is apparent that decedent did not contribute money to the acquisition of the home. Appellant testified that the only money contribution made by decedent was her monthly social security checks which decedent did not receive until she was 65. Decedent had her 65th birthday in approximately 1975 (she was 73 when she died in 1983), long after appellant paid off the family home in 1959. However, she did make contributions in money to other jointly held property, i.e., her monthly social security checks were deposited into a joint bank account out of which joint living expenses were paid.
Therefore, the amount of jointly held property that is directly proportionate to the amount decedent contributed in money to the joint account may be included in the estate (in other words, that amount is not excepted from the joint property which is to be included in the estate pursuant to § 474.163.3) for purposes of determining the value of the estate from which appellant may calculate his share to take against the will.
A final question must be asked and answered. Did decedent make any contribution in money’s worth? There is no definition of “money’s worth” in the probate code. However, money’s worth is generally defined as being something which is reduced to a money value or is capable of being valued in terms of money. Matter of Estate of Kersten, 71 Wis.2d 757, 239 N.W.2d 86 (1976); Estate of Everett Otte, 1972, 31 T.C.M. 301 (CCH) ¶ 31,319.
On this question, the probate court concluded, and this court agrees, that the work performed by a homemaker should be considered as being within the definition of money’s worth. This concept is well-recognized in Missouri in the area of domestic law. Homemaking spouses contribute to the acquisition of jointly held property in such ways as:
1) relieving the income-earning spouse of domestic duties enabling him or her to be free to seek and hold full-time employment outside the home whereby the income-earning spouse may earn money used to acquire jointly held property;
2) providing services that otherwise the income-earning spouse would have to pay for out of his or her money earnings thereby allowing the income-earning spouse to save money, increasing the money available to acquire jointly held property;
3) providing moral support and comfort of a wife or husband and providing a home, thereby giving the income-earning spouse an incentive to continue to work *268 and earn the money used to acquire the jointly held property.
Therefore, this court adopts and affirms the probate court’s holding that homemaking duties may be considered as contributions in money’s worth for purposes of § 474.163.3.
As noted, review of this judgment, however, is pursuant to Rule 73.01 as interpreted by Murphy v. Carron, supra, and must be affirmed unless said judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously applies or declares the law. That portion of the probate court’s decision holding that decedent’s contribution as a homemaker was equal to a one-half interest in the jointly held property must be reversed because there is not substantial evidence to support such a holding.
Appellant was the only witness to testify at the probate hearing, and neither in his testimony nor from any other evidence is it shown that decedent performed homemaking duties. Nor was there evidence as to the value in money’s worth of decedent’s services as a homemaker, if she in fact was a homemaker. The court below erroneously infers that if decedent was not employed outside the home then she must have been a homemaker, and that she performed homemaking duties which had a money’s worth equivalent to one-half of the value of the jointly held property. Such inference cannot be made without an evidentiary basis. Decedent may have been an invalid, unable to perform certain homemaking duties, or neglectful in performing homemaking duties so that her contribution would not equal a one-half interest in jointly held property.
Therefore, the judgment is reversed and the cause is remanded for determination of decedent’s role as homemaker and the money’s worth value of her homemaking services, if any.
DOWD, P.J., and REINHARD, J., concur.

. Revisor’s error. Statute enacted by General Assembly reads "of”. An Act concerning trusts and estates of decedents, Eightieth Gen. Assembly, Sec.Reg.Sess., P. 480 (1980).